**IN THE UNITED STATES DISTRICT COURT FOR DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SEANPAUL REYES, | * | |
| 21 Mount Snow Lane | | |
| Coram, NY 11727 | * | COMPLAINT AND DEMAND |
| | | |
| PLAINTIFF, | * | FOR JURY TRIAL |
| | | |
| v. | * | |
| | | |
| TFC CHARLES LAVOIE | * | |
| Connecticut State Police | | |
| TROOP H – Bradley International Airport | * | |
| 30 Firehouse Road | | |
| Building 85-361 | * | |
| Windsor Locks, CT 06096 | | |
| | * | |
| SGT. BRYAN J. FAHEY, #160 | | |
| Connecticut State Police | * | |
| DESPP Headquarters | | |
| 1111 Country Club Road | * | |
| Middletown, Ct. 06457 | | |
| | | |
| OFFICER MATTHEW COSTELLO, | | |
| Connecticut State Police | * | |
| DESPP Headquarters | | |
| 1111 Country Club Road | * | |
| Middletown, Ct. 06457 | | |
| | * | |
| DEFENDANTS | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

SEANPAUL REYES by his undersigned counsel, hereby sues Defendants, TFC Charles Lavoie, Sgt. Bryan J. Fahey, and Ofc. Matthew Costello, and states the following:

<u>INTRODUCTION</u>

1.      SeanPaul Reyes (hereinafter "Mr. Reyes") is filing this civil rights action for monetary damages for violation of his rights as secured by the United States Constitution, the laws of the United States, and the laws of Connecticut against TFC Charles Lavoie, Sgt. Bryan J.

1

Fahey, and Officer Matthew Costello. The claims asserted herein involve three separate incidents – the first two incidents occurred on July 23, 2021 and the third incident occurred on June 16, 2023. As is described below, Mr. Reyes, in violation of his constitutional rights, was unlawfully detained, arrested, assaulted, and battered, and retaliated against, all without legal justification.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343, this being an action seeking redress for the violation of the Plaintiff's constitutional and civil rights.

3.      Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

4.      Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) in that the events giving rise to this claim occurred within the boundaries of the Connecticut.

## DEMDAND FOR JURY TRIAL

5.      Plaintiff demands a trial by jury on each and every one of her claims as pleaded herein.

## PARTIES

6.      The Plaintiff SeanPaul Reyes is a resident of New York.

7.      Defendant TFC Charles Lavoie, on the date of the occurrence, was a duly authorized police officer with the Connecticut State Police who, at all times herein relevant was working as agent, servant and/or employee of the Connecticut State Police and acting within the scope of his employment. He is sued in his individual capacity.

8.     Defendant Sgt. Bryan J. Fahey, on the date of the occurrence, was a duly authorized police officer with the Connecticut State Police who, at all times herein relevant was working as agent, servant and/or employee of the Connecticut State Police and acting within the scope of his employment. He is sued in his individual capacity.

9.     Defendant Officer Matthew Costello, on the date of the occurrence, was a duly authorized police officer with the Connecticut State Police who, at all times herein relevant was working as agent, servant and/or employee of the Connecticut State Police and acting within the scope of his employment. He is sued in his individual capacity.

10.    By the conduct, acts, and omissions complained of herein, Defendants Lavoie, Fahey, and Costello violated clearly established constitutional standards under the First, Fourth, and Fourteenth Amendments to the United States Constitution of which a reasonable police officer under the circumstances would have known.

<u>FACTS COMMON TO ALL COUNTS</u>

11.    Mr. Reyes is an independent journalist, and he focuses on matters on public interest and government transparency. The purpose of his videos is to observe how public officials behave and how they treat the public, and to gather information to disseminate to the public so that individuals can properly redress their government if the public officials do not properly carry out their duties. On July 23, 2021, at the time of the first two incidents described in this Complaint, Long Island Audit had 75,000 subscribers and its videos had been viewed approximately 10,000,000 times. As of the time of the filing of this Complaint, Long Island Audit has 762,000 subscribers and its videos had been viewed approximately 500,000,000 times.

12.    As a First Amendment auditor, Mr. Reyes has distinguished himself as generally being polite and respectful while conducting his audits. He strongly believes in the Constitution and

Bill of Rights and, regarding the incidents described herein, he did not want or expect his rights to be violated. However, because his rights were violated, he is initiating the instant lawsuit.

13.     Part of his work as a First Amendment auditor is to see whether public officials, including police officers, understand and respect the rights granted to individuals under the United States Constitution. While there have been many times when public officials have properly carried their public duties and respected Mr. Reyes' constitutional rights, unfortunately there have been times, such as is described herein, when public officials have not respected Mr. Reyes' constitutional rights.

14.     Mr. Reyes films his encounters with public officials so that he can disseminate his interactions with public officials to the public at large through his youtube channel; he does this so that public can have information necessary to allow members of the public, if they choose, to redress their grievances with the actions of public officials.

15.     On July 23, 2021, Mr. Reyes went to Bradley International Airport to do a story for Long Island Audit.

16.     Bradley International Airport is a public international airport in Windsor Locks, Connecticut. The airport is owned and operated by the Connecticut Airport Authority. The Connecticut Airport Authority, as described on its website, was established as a quasi-public agency in 2011 to own, improve, and operate Bradley International Airport and the five state-owned general aviation airports (Danielson, Groton-New London, Hartford-Brainard, Waterbury-Oxford, and Windham). According to the website, "[t]he CAA strives to provide excellent customer service and top-quality facilities for its passengers while making Connecticut's airports more attractive to new airlines, establishing new routes, and supporting Connecticut's overall economic development and growth strategy."

17.     While at Bradley International Airport, Mr. Reyes started to video record the area in and around the TSA checkpoint.

18.     Before going to Bradley International Airport, Mr. Reyes checked the TSA website to see if video recording was prohibited. At the time the TSA did not prohibit video recording; according to the website:

> TSA does not prohibit photographing, videotaping or filming at security checkpoints, as long as the screening process is not interfered with or sensitive information is not revealed. Interference with screening includes but is not limited to holding a recording device up to the face of a TSA officer so that the officer is unable to see or move, refusing to assume the proper stance during screening, blocking the movement of others through the checkpoint or refusing to submit a recording device for screening. Additionally, you may not film or take pictures of equipment monitors that are shielded from public view.

19.     This policy had been on TSA's website as early as May 10, 2017, which is more than four years prior to Mr. Reyes' visit to Bradley Airport.

20.     While video recording in and around the security checkpoints, Mr. Reyes adhered to policy as he did not interfere with the screening process or reveal sensitive information as is described by the policy.

21.     Within twenty seconds of recoding inside the airport, Mr. Reyes was addressed by a TSA officer who inquired what the video is for. This officer repeated this question about 20 seconds later and tried to engage Mr. Reyes in conversation. Mr. Reyes, who knew that he was permitted to record, did not respond.

22.     A different TSA officer, Megan Dumas, then approached Mr. Reyes approximately one minute and ten seconds after he entered the airport. Ms. Dumas then asked, "Can I ask why you are recording?" Mr. Reyes, who instinctively understood that Ms. Dumas was trying to pry into Mr. Reyes lawful activities, replied that he was "just recording." Ms. Dumas then continued to pry, asking, "Any particular reason you are recording our security operation?" Mr. Reyes said

that he is interested in it. Shortly thereafter, and contrary to the TSA policy, Ms. Dumas erroneously told Mr. Reyes, "Well, you know that you are not supposed to be recording our operation."

23.     Mr. Reyes, who was surprised that Ms. Dumas was giving him incorrect information about the recording policy, asked, "I'm not supposed to be recording?" In response, Ms. Dumas stated, "you are not supposed to be recording anything that is going on here."

24.     Mr. Reyes inquired, "Why not?" and Ms. Dumas engaged in further conversation with Mr. Reyes, inquired if he was traveling, and sought to have him remove his glasses. Mr. Reyes said he was not going to answer her questions, as is his right, yet she continued to question him.

25.     Ms. Dumas then stated, "I need you to stop recording" and "could you please stop recording?" Mr. Reyes responded, "I am not going to stop recording. I am just going to go on about my business."

26.     Ms. Dumas persisted in trying to get Mr. Reyes to stop recording, stating, "then I need you to please stop recording." Mr. Reyes replied, "I am not going to stop recording." Ms. Dumas persisted as she repeatedly told him, "I need you to stop recording" and she continued to ask investigatory questions.

27.     Ms. Dumas line of questions suggested that she was investigating Mr. Reyes for some illegal conduct; however, as is stated *supra*, Mr. Reyes was not violating the law by recording in public and was doing so in accordance with the rules set forth by the TSA.

28.     Ms. Dumas then continued to try to get information from Mr. Reyes; however, Mr. Reyes did not feel it necessary to reveal his intentions other than to state that he was working on a story. For instance, Ms. Dumas asked, "you are working on a story for who? Do you work for yourself?

Who do you work for? Are you an entrepreneur or businessman?" Mr. Reyes then repeated that he did not want to answer these questions. Ms. Dumas then left to get her supervisor.

29.     Mr. Reyes then walked over to speak to another TSA officer, Brett Cavanaugh, who identified himself as a supervisor. Mr. Cavanaugh told Mr. Reyes, "You have every right to film as long as you don't film the x-ray screens … and impede the operation, you are fine." Mr. Reyes stated he was an independent journalist and Mr. Cavanaugh stated, "I think you are well within your rights."

30.     As Mr. Reyes was finishing his conversation with Mr. Cavanaugh, a police officer, Trooper Lavoie, arrived on bicycle. Trooper Lavoie stated, "I am here to find out what your business is here at the airport today."

31.     Mr. Reyes replied, "Nothing, just gathering content for a story" and added he's an independent journalist.

32.     Trooper Lavoie said, "Great. Do you have your ID on you?" to which Reyes declined and Lavoie, contrary to established case law and in the absence of a Connecticut statute requiring a person to identify, said, "when a state trooper asks for your ID, you going to have to provide it."

33.     Mr. Reyes, who understood the law, replied, "Connecticut is not a stop and ID state and unless you have a reasonable articulable suspicion [that I've committed …"

34.     Before Mr. Reyes finished his statement Trooper Lavoie interrupted him and said, "I'm not here to get a legal advice from you, I'm asking legally, an order from a state trooper to provide your ID. You're causing alarm at the airport." Trooper Lavoie further mentioned that the police were approached by "multiple people asking what you are doing."

35.     Mr. Reyes explained to Trooper Lavoie that he had just spoken with a TSA supervisor who told him that he was well within his rights to do what he was doing at the airport.

36. Trooper Lavoie then commanded Mr. Reyes to put his hands behind his back and Mr. Reyes complied. Trooper Lavoie then placed Mr. Reyes in handcuffs even though Trooper Lavoie did not have reasonable articulable suspicion that criminal activity was afoot and that Mr. Reyes was involved in any criminal activity and did not have probable cause to arrest Mr. Reyes. By unlawfully detaining, handcuffing, and/or arresting Mr. Reyes, Trooper Lavoie violated Mr. Reyes' Fourth Amendment Rights.

37. At the point after Trooper Lavoie commanded Mr. Reyes to put his hands behind his back, Trooper Lavoie unlawfully seized Mr. Reyes' phone and stopped Mr. Reyes' recording without his consent and without legal justification. Mr. Reyes did not want the recording to be stopped and, by stopping the recording, Trooper Lavoie interfered with Mr. Reyes rights protected by the First Amendment.

38. While Mr. Reyes was in handcuffs during the time that Mr. Reyes' video recording was stopped, Trooper Lavoie's body worn camera shows what happened next; that immediately after being placed in handcuffs, Mr. Reyes said that he does not have any ID on him, that he is an independent journalist and he offered to provide his name and date of birth to Trooper Lavoie.

39. Trooper Lavoie then radioed that he has "one detained; refusing to provide ID." Trooper Lavoie then again asked Mr. Reyes for his ID and Mr. Reyes repeated that he did not have his ID. Trooper Lavoie then conducted an unlawful *Terry* pat down of Mr. Reyes' outer clothing; Trooper Lavoie did this even though he did not have, as is required by *Terry*, reasonable articulable suspicion that Mr. Reyes was armed and dangerous.

40. Mr. Reyes then repeated that he is an independent journalist working to gather content for a story and that he has not broken any laws. Trooper Lavoie then stated, "No one said that you did; you are not under arrest right now, you are just being detained."

41.    Mr. Reyes asked, "why are you detaining me? Trooper Lavoie replied, "for interfering with my investigation." Mr. Reyes said that Trooper Lavoie "needs to have reasonable articulable suspicion" and Trooper Lavoie responded that his reasonable articulable suspicion is that Mr. Reyes "is causing a disturbance at the airport."

42.    Trooper Lavoie's claim that Mr. Reyes was causing a disturbance at the airport is not supported by any articulable facts. Mr. Reyes had not been loud and disorderly but rather had been peacefully recording, exercising his First Amendment rights.

43.    Mr. Reyes again explained that he is an independent journalist and that he was gathering content [for a story.] Trooper Lavoie then told Mr. Reyes, "You need to stop trying to teach me legal …. You need to stop and listen to me." Trooper Lavoie added, "I am trying to identify you because you are causing a disturbance at the airport. You refused to provide me your ID. You are clearly doing this on purpose so we are going to go through the books on this."

44.    Mr. Reyes again told Trooper Lavoie that he is "gathering content for a story" and that he is an independent journalist."

45.    Trooper Lavoie, seemingly unaware that the First Amendment grants individuals in the United States the right to practice journalism, asked Mr. Reyes "to prove" that he is a journalist. Mr. Reyes replied that there is no proof of that; the First Amendment grants me the right of freedom of press."

46.    Trooper Lavoie then again asked Mr. Reyes for his name and Mr. Reyes responded by asking what would happen to him if he refuses to give his name. Trooper Lavoie stated, "you are going to be placed under arrest and taken to be fingerprinted to identify you."

47.     Mr. Reyes did not want to identify himself but, having been threatened by arrest by Trooper Lavoie Mr. Reyes, acting under duress, provided his name and date of birth and asked for Trooper Lavoie if he could speak with his supervisor.

48.     Trooper Lavoie then asked if Mr. Reyes has a Connecticut driver's license and Mr. Reyes said he did not. Trooper Lavoie then asked where Mr. Reyes has a driver's license. In response, Mr. Reyes said, "since I'm being detained … I am not going to answer any more questions until your supervisor gets here please. I invoke my Fifth."

49.     Even after Mr. Reyes invoked his right to remain silent under the Fifth Amendment, Trooper Lavoie asked Mr. Reyes what state he resides in. Mr. Reyes repeated, "Sir, I told you that since you are detaining me, I am … going to invoke my Fifth Amendment right to remain silent because I want to speak to a supervisor, please. You are making a big mistake here."

50.     Trooper Lavoie replied, "unfortunately you made the mistake by not identifying yourself …. You still need to identify yourself you are in an international airport. The security of everyone here is more than that." This was a curious statement to make because there was no allegation that Mr. Reyes, by exercising his First Amendment right to record public official in the course of their duties, somehow was a threat to the safety and security of others who were in the airport. Mr. Reyes then correctly stated that the Constitution … does not end in an international airport."

51.     Mr. Reyes, who had not been violent, belligerent, or aggressive, stated that he would continue to comply with whatever Trooper Lavoie needs him to do. Trooper Lavoie then stated, "Mr. Reyes, there was no need for you to be handcuffed. You made it this way."

52.     Mr. Reyes then asked to have the handcuffs removed. Trooper Lavoie refused to do so until his backup arrives.

53.     During further conversation, Mr. Reyes repeated that TSA supervisor Cavanaugh had told him that his is permitted to record the security checkpoint. Trooper Lavoie responded, "I did not deny that," and added "you are causing alarm and disturbance to the passengers." Trooper Lavoie further stated, "I did not say that there was a crime committed; I tried to identify you to make sure that there was no issue here."

54.     After some more discussion, during which time Mr. Reyes was still in handcuffs asserting that he was being unlawfully detained, Trooper Lavoie stated, "We are going to release you as soon as we are able to do that." Trooper Lavoie added, "No one said you were aggressive."

55.     Thereafter, a Sgt. Drummond approached Trooper Lavoie and Trooper Lavoie told Sgt. Drummond, "Multiple people came up to me, including TSA, saying that this guy was acting very suspicious at the checkpoint. I observed him recording, which is nothing wrong with that, however, when I went to identify him to find out what his business is at the airport, he refused to comply. He wouldn't provide me with any ID. He is like pushing the limits; he is trying to test us. He is saying I violated his First Amendment rights and that he did not have to provide ID and that's why he didn't. When I asked him to put his hands behind his back because he wasn't being complaint, he refused to do so."

56.     Sgt. Drummond asked Trooper Lavoie where he found Mr. Reyes and Trooper Lavoie said that Reyes was "literally right here [referring to the publicly accessible area.]", Sgt. Drummond clarified, "so he wasn't on the other side" and Trooper Lavoie then repeated that Mr. Reyes was "on the unsecured side recording the TSA checkpoint and passengers." Trooper Lavoie added, "people were just alarmed and disturbed about what he was doing so I wanted to make sure everything was safe."

57.     Sgt. Drummond then approached Mr. Reyes and Mr. Reyes said, "Sgt. Drummond, I would like to be released immediately from this unlawful detainment. I have not broken any laws and your … trooper did not have any reasonable articulable suspicion to identify me …. I talked to a supervisor from the TSA … and he told me that I have every right to film the security checkpoint. This is a public building. I am an independent journalist and he is violating my First Amendment right of freedom of press and like I said, I would like to be released from these handcuffs…."

58.     Rather than releasing Mr. Reyes immediately, Sgt. Drummond asked Mr. Reyes, "Why were you videotaping, just out of curiosity?" Mr. Reyes replied, "the same thing I told the trooper, I am an independent journalist gathering content for a story…." Mr. Reyes added, "the longer I am in [handcuffs], the longer you guys are violating my rights. So, as a supervisor, I would advise you to do the right thing here and have me un-detained because I have not broken any laws and your trooper has a grave misunderstanding of Connecticut law, saying if a trooper asks for your ID, you … are obligated legally to provide it. I know that you do not, that you need reasonable articulable suspicion …."

59.     At this point, apparently agreeing that the continued (and perhaps entire) detention was improper, Sgt. Drummond told Mr. Reyes to turn around and another trooper approached Mr. Reyes to remove the cuffs.

60.     Mr. Reyes continued, "you need reasonable articulable suspicion and I would like to file a formal complaint against this trooper" with internal affairs and with you as a supervisor.

61.     Sgt. Drummond directed Mr. Reyes to the professional standards unit of the police department and added that he [Sgt. Drummond] does not take complaints.

62.     While trying to redress his grievances against Trooper Lavoie to Sgt. Drummond, Sgt. Drummond told Mr. Reyes to "stop talking or I am going to leave."

63.     Mr. Reyes then retrieved his phone and other belongings from Trooper Lavoie.

64.     Trooper Lavoie then asked Sgt. Drummond, "can't we at least give him a civil infraction?"

65.     When Mr. Reyes' camera started rolling again, Reyes was no longer in handcuffs, was not detained, and was not under arrest. Mr. Reyes can be heard explaining that he was unlawfully cuffed and detained for approximately 20 minutes by a rogue officer, Trooper Lavoie, who put him in cuffs because he refused to provide his ID. Mr. Reyes further explained that Trooper Lavoie "turned off my camera. Again, a violation of my rights. I have the right to record in public."

66.     A minute or so later, Sgt. Drummond asked Mr. Reyes, "how much longer do you need to be here?" Mr. Reyes responded, "as long as I like to sir. This is a public building." Sgt. Drummond then repeated, "I am just asking how much longer do you plan on staying?" Mr. Reyes declined to answer. Sgt. Drummond and another trooper then walked away from Mr. Reyes.

67.     After being unlawfully detained at the airport, Mr. Reyes went to the Connecticut State Trooper Headquarters to file a complaint against Trooper Lavoie for violating his constitutional rights. Mr. Reyes also sought to peacefully exercise his First Amendment rights to film in public while at the headquarters.

68.     Upon arriving at Connecticut State Police Headquarters, Officer Costello who was standing outside the door, gave Mr. Reyes an Internal Affairs form to fill out. Mr. Reyes told Officer Castello the story of what happened, and Officer Costello asked if he wanted to discuss it

inside but advised him that filming is not permissible inside headquarters. Mr. Reyes asked why he could not film inside and Officer Costello said, "I'm not a hundred percent sure, but I know you cannot film inside because it is state property." Mr. Reyes agreed to follow Officer Costello's instruction to not go inside to film; Mr. Reyes did this even though he believed it was his right to film inside.

69.     Officer Costello and Mr. Reyes then cordially discussed Mr. Reyes's allegation that he was wrongfully detention outside the building; Mr. Reyes explained to Officer Costello what had occurred at the airport.

70.     As Mr. Reyes and Officer Costello continue their conversation, Costello tried to explain what Lavoie's rationale might have been (e.g., officer safety, etc.) Officer Costello asserted that an officer does have the right to stop and ID someone and Mr. Reyes disagreement with this assertion.

71.     Officer Costello and Mr. Reyes spoke for another minute or so and then Officer Costello retrieved Sgt. Bryan Fahey to speak with Mr. Reyes. It seemed to Mr. Reyes that Officer Costello did so because he, Officer Costello, believed that Sgt. Fahey could properly assist Mr. Reyes.

72.     However, Sgt. Fahey, who did not appear to genuinely want to help Mr. Reyes, approached with a scowl and curtly asked Mr. Reyes, "you videotaping me? I don't want to talk to you then. If you want to videotape me, I am not talking. If you want to talk to me like a man, then we can chat."

73.     Mr. Reyes, who was surprised by Sgt. Fahey's comments about video recording as well-established case law grants individuals the right to record public officials in the course of their duties, inquired, "you guys wear body cameras here. What's the difference?" and Sgt. Fahey

responded, "I don't have a body camera." Sgt. Fahey then asked, "what's the problem?" and Mr. Reyes then told Sgt. Fahey what occurred at the airport.

74.     While Mr. Reyes was speaking, Sgt. Fahey interrupted him and in a condescending manner asked, "how can I help you today with pistol permits?" Mr. Reyes was bewildered by this comment because Officer Costello ostensibly retrieved Sgt. Fahey to address Mr. Reyes internal complaint and not for any permit issue. Mr. Reyes calmy replied, "I don't need help with pistol permits. I need help with reporting a civil rights violation."

75.     Sgt. Fahey told Mr. Reyes then that he can go "contact internal affairs department online or there is a phone number to call." At this point, Sgt. Fahey told Mr. Reyes that he is a supervisor of "special licensing and firearms." During his interaction with Sgt. Fahey, Sgt. Fahey appeared nasty, rude, annoyed, and agitated and stated, "there are 529 arms dealers in Connecticut and it's my job to deal with those people…." This comment clearly was not intended to respond to, and did not address, Mr. Reyes' concerns.

76.     Mr. Reyes attempted to get Sgt. Fahey to address his complaint against Trooper Lavoie stating, "I don't know why you are acting like this. I am just trying to voice a complaint about civil rights violation" and Sgt. Fahey replied, "I can't help you with your complaint today…. You have your outlet. You can call IA. I can get you the number or you could go online …."

77.     Mr. Reyes was surprised by this statement because he had been directed by Sgt. Drummond to go to the headquarters to make his complaint and, while he was there, Officer Costello retrieved Sgt. Fahey to assist Mr. Reyes.

78.     Mr. Reyes responded, "this is headquarters. Can't I just speak to somebody?" Sgt. Fahey replied that "internal affairs division is not here" to which Mr. Reyes asked, "where is it?"

79.     Sgt. Fahey then told Mr. Reyes where the internal affairs division is located, gave him

address, and told him how to get there. Sgt. Fahey told Mr. Reyes that "you have your outlet" to

go make a complaint. Mr. Reyes asked if he could speak to someone who could help him and

Sgt. Fahey replied, "You can call IA or you can go there and speak to them if they have time to

speak to you …. We've given you several outlets. We want to entertain your complaint through

the proper channels, through internal affairs."

80.     After this conversation, Sgt. Fahey said, "have a great day" to which Mr. Reyes replied,

"nice talking to you." As he was about to walk back inside, Sgt. Fahey then asked Mr. Reyes,

"are you all set here?" Mr. Reyes replied yes, and Sgt. Fahey said, "so you can go to IA right

now, correct?" Mr. Reyes said that he would be going and, instead of walking back inside, Sgt.

Fahey stopped and stared at Mr. Reyes. Apparently, Sgt. Fahey believed that Mr. Reyes was

required to leave the headquarters immediately and was not permitted to remain on the premises.

81.     Sgt. Fahey waited for Mr. Reyes to leave. As Mr. Reyes was still standing there, Sgt.

Fahey said, "so you are just going to stand there with your cell phone out." Reyes replied, "I

thought you were busy. You should get to work."

82.     Sgt. Fahey, apparently unhappy that a mere civilian would dare to question a police

officer's conduct, came closer to Mr. Reyes, and said, "I should get to work? Is that what you're

telling me?" Mr. Reyes responded, "if you're busy …" at which point Sgt. Fahey unlawfully and

without legal justification grabbed Mr. Reyes' cell phone that was in Mr. Reyes' right hand and

said, "are we going to have a problem here you and I?" Mr. Reyes, shocked at Sgt. Fahey's

unwarranted attempt to seize his cell phone, managed to hold on to the phone at that time.

83.     Sgt. Fahey, continuing to be the aggressor, then took a few steps toward Mr. Reyes,

reached out to grab Mr. Reyes with one hand and used his other hand to grab Mr. Reyes' cell

phone and take it from him. In doing so, Sgt. Fahey caused the recording to stop. Sgt. Fahey then tossed the phone aside, causing damage to the phone.

84.     Sgt. Fahey, as can be seen on one of the other trooper's body worn camera footage, grabbed Mr. Reyes' shirt and shoved him several times in an effort to push Mr. Reyes towards the parking lot.

85.     As Sgt. Fahey continued assaulting him, Mr. Reyes did not resist or fight back; he walked backward with his hands in the air as Sgt. Fahey pushed him while Officer Costello pulled out his handcuffs. Sgt. Fahey grabbed and shoved Mr. Reyes for about 40 seconds and this was completely unwarranted.

86.     As he pushed Mr. Reyes backward, Sgt. Fahey appeared to be aggressive, saying that "this is a private property, you are not going to videotape me and have an attitude." He added, "I'm not the one; I gave you everything you need but all you want to do is stand here and hold your cell phone in my face." Mr. Reyes, however, did not hold his cell phone in Sgt. Fahey's face. Sgt. Fahey then ordered Mr. Reyes to "take your cell phone and go make your complaint."

87.     After he pushed Mr. Reyes to the front parking lot, Sgt. Fahey left and walked away. Mr. Reyes asked if he could go get his cell phone and, despite being on public property at the police headquarters, Mr. Reyes was not permitted to go get his cell phone. Mr. Reyes was told that one of the officers would get the phone for him.

88.     To Mr. Reyes dismay, he asked the other officer if he was serious about wanting to arrest him. The officer said he was going to detain him with the situation that was going on. After he was grabbed, pushed, and threated with arrest, Mr. Reyes peacefully left the premises.

89.    On or about June 16, 2023, Mr. Reyes went back Connecticut state police headquarter to make a FOIA request and to obtain Sgt. Fahey's disciplinary record. When he arrived, he saw Sgt. Fahey inside the building.

90.    Mr. Reyes, while outside the building, was approached by a female trooper; he stated his purpose for being there; namely that he has to do some FOIA requests and Sgt. Fahey's disciplinary record.

91.     As Mr. Reyes was conversing with the female trooper, Sgt. Fahey came to the door and told Mr. Reyes that his request must be done in writing. Sgt. Fahey, who saw another civilian standing behind Mr. Reyes, ignored Mr. Reyes even though Mr. Reyes said he was there to conduct business, and asked the civilian "sir, what can we do for you? Come on in."

92.    Sgt. Fahey then permitted the other civilian to go inside but told Mr. Reyes that he had to "get out of the way." Sgt. Fahey had no legal justification for excluding Mr. Reyes from the police building, which was open to the public.

93.    Sgt. Fahey physically blocked Mr. Reyes from getting into the building and told Mr. Reyes, "You can't come in the building, you have no business here." As he said this, Sgt. Fahey violently pulled the door shut and, in doing so, made unwanted contact with Mr. Reyes.

94.    Mr. Reyes did not like that Sgt. Fahey was denying him access the building as he permitted other civilians to enter. He told Sgt. Fahey, "Sgt., I know your inclination is to assault me, stop pushing me, I am trying to get in the building."

95.    Sgt. Fahey then unlawfully grabbed Mr. Reyes' phone, which stopped it from recording, and placed it in Mr. Reyes' pocket. Sgt. Fahey then told him to "back up before I arrest you."

96.     Sgt. Fahey then continued to yell and try to intimidate Mr. Reyes. Sgt. Fahey got within

inches of Mr. Reyes' face. Sgt. Fahey then shut the door without permitted Mr. Reyes to go

inside at this time.

97.     The actions of Sgt. Fahey in grabbing Mr. Reyes' phone to stop him from recording and

in forcing Mr. Reyes out of the publicly accessible police building were in retaliation for Mr.

Reyes exercising his clearly established First Amendment rights on July 23, 2021 and in

response to Mr. Reyes' stated intention to obtain information about Sgt. Fahey via a public

records request.

98.     Sgt. Fahey then continued to yell and try to intimidate Mr. Reyes. Sgt. Fahey got within

inches of Mr. Reyes' face. Sgt. Fahey then shut the door without permitted Mr. Reyes to go

inside at this time.

99.     Shortly thereafter, the female trooper can be seen on her body worn camera speaking

with Sgt. Fahey. After this conversation, the female trooper opened the door for Mr. Reyes and

permitted him to enter.

### COUNT 1 – VIOLATION OF 42 U.S.C. § 1983 – FOURTH AMENDMENT – AGAINST TROOPER LAVOIE FOR UNLAWFULLY DETAINING MR. REYES

1-99.   Plaintiff Sean Paul Reyes incorporates herein the preceding allegations of this Complaint.

100.    At all relevant times herein, Mr. Reyes had rights under the Fourth Amendment not to

have his person or property unlawfully searched, seized, detained in an unreasonable manner, not

to be subjected to excessive force, not to be deprived of his liberty without due process of law,

and not to be summarily punished.

101.    At all times relevant herein, Defendant Lavoie was a state actor, and his conduct was

subject to 42 U.S.C. § 1983.

102.     By detaining Mr. Reyes without legal justification, Defendant Lavoie, acting under the color of law, deprived Mr. Reyes of his clearly established and well-settled rights under the Fourth Amendment of the U.S. Constitution not to have his person unlawfully seized and/or detained in an unreasonable manner.

103.     Defendant Lavoie subjected Mr. Reyes to these deprivations of rights either maliciously or by acting with reckless disregard for whether the Plaintiff's rights would be violated by his actions.

104.     As a result of the aforementioned federal Constitutional violations, Mr. Reyes suffered injury, mental anguish, and other related injuries, losses, and damages.

WHEREFORE, Plaintiff, Sean Paul Reyes, claims against Defendant Charles Lavoie (a) compensatory damages in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), (b) punitive damages in the amount of Five Hundred Thousand Dollars ($500,000), (c) an award of reasonable attorney's fees and costs, incurred in pursuing this action, as provided under 42 U.S.C. §1988, and; (d) such other further relief to which Plaintiff may be entitled.

## COUNT 2 – VIOLATION OF 42 U.S.C. § 1983 – FOURTH AMENDMENT – AGAINST TROOPER LAVOIE FOR UNLAWFULLY HANDCUFFING MR. REYES

104.     Plaintiff SeanPaul Reyes incorporates herein the preceding allegations of this Complaint.

105.     At all relevant times herein, Mr. Reyes had rights under the Fourth Amendment not to have his person or property unlawfully searched, seized, detained in an unreasonable manner, not to be subjected to excessive force, not to be deprived of his liberty without due process of law, and not to be summarily punished.

106.     At all times relevant herein, Defendant Lavoie was a state actor and his conduct was subject to 42 U.S.C. § 1983.

107.    By handcuffing Mr. Reyes without legal justification, Defendant Lavoie, acting under the color of law, deprived Mr. Reyes of his clearly established and well-settled rights under the Fourth Amendment of the U.S. Constitution not to have his person unlawfully seized and/or detained in an unreasonable manner.

108.    Defendant Lavoie subjected Mr. Reyes to these deprivations of rights either maliciously or by acting with reckless disregard for whether the Plaintiff's rights would be violated by his actions.

109.    As a result of the aforementioned federal Constitutional violations, Mr. Reyes suffered injury, mental anguish, and other related injuries, losses, and damages.

WHEREFORE, Plaintiff, SeanPaul Reyes, claims against Defendant Charles Lavoie (a) compensatory damages in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), (b) punitive damages in the amount of Five Hundred Thousand Dollars ($500,000), (c) an award of reasonable attorney's fees and costs, incurred in pursuing this action, as provided under 42 U.S.C. §1988, and; (d) such other further relief to which Plaintiff may be entitled.

### COUNT 3 – VIOLATION OF 42 U.S.C. § 1983 – FOURTH AMENDMENT – AGAINST TROOPER LAVOIE FOR CONDUCTING UNLAWFUL PATDOWN OF MR. REYES

110.    Plaintiff SeanPaul Reyes incorporates herein the preceding allegations of this Complaint.

111.    At all relevant times herein, Mr. Reyes had rights under the Fourth Amendment not to have his person or property unlawfully searched, seized, detained in an unreasonable manner, not to be subjected to excessive force, not to be deprived of his liberty without due process of law, and not to be summarily punished.

112.    At all times relevant herein, Defendant Lavoie was a state actor and his conduct was subject to 42 U.S.C. § 1983.

113. By conducting a pat down of Mr. Reyes without legal justification, Defendant Charles Lavoie, acting under the color of law, deprived Mr. Reyes of his clearly established and well-settled rights under the Fourth Amendment of the U.S. Constitution not to have his person unlawfully seized and/or detained in an unreasonable manner.

114. Defendant Lavoie subjected Mr. Reyes to these deprivations of rights either maliciously or by acting with reckless disregard for whether the Plaintiff's rights would be violated by his actions.

115. As a result of the aforementioned federal Constitutional violations, Mr. Reyes suffered injury, mental anguish, and other related injuries, losses, and damages.

WHEREFORE, Plaintiff, SeanPaul Reyes, claims against Defendant Charles Lavoie (a) compensatory damages in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), (b) punitive damages in the amount of Five Hundred Thousand Dollars ($500,000), (c) an award of reasonable attorney's fees and costs, incurred in pursuing this action, as provided under 42 U.S.C. §1988, and; (d) such other further relief to which Plaintiff may be entitled.

### COUNT 4 – VIOLATION OF 42 U.S.C. § 1983 – FOURTH AMENDMENT – AGAINST TROOPER LAVOIE FOR UNLAWFULLY SEIZING MR. REYES' CELL PHONE

116. Plaintiff SeanPaul Reyes incorporates herein the preceding allegations of this Complaint.

117. At all relevant times herein, Mr. Reyes had rights under the Fourth Amendment not to have his person or property unlawfully searched, seized, detained in an unreasonable manner, not to be subjected to excessive force, not to be deprived of his liberty without due process of law, and not to be summarily punished.

118. At all times relevant herein, Defendant Lavoie was a state actor and his conduct was subject to 42 U.S.C. § 1983.

119. By seizing Mr. Reyes's cell phone without legal justification, Defendant Lavoie, acting under the color of law, deprived Mr. Reyes of his clearly established and well-settled rights under the Fourth Amendment of the U.S. Constitution not to have his person and property unlawfully seized and/or detained in an unreasonable manner.

120. Defendant Lavoie subjected Mr. Reyes to these deprivations of rights either maliciously or by acting with reckless disregard for whether the Plaintiff's rights would be violated by his actions.

121. As a result of the aforementioned federal Constitutional violations, Mr. Reyes suffered injury, mental anguish, and other related injuries, losses, and damages.

WHEREFORE, Plaintiff, SeanPaul Reyes, claims against Defendant Charles Lavoie (a) compensatory damages in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), (b) punitive damages in the amount of Five Hundred Thousand Dollars ($500,000), (c) an award of reasonable attorney's fees and costs, incurred in pursuing this action, as provided under 42 U.S.C. §1988, and; (d) such other further relief to which Plaintiff may be entitled.

**COUNT 4 – VIOLATION OF 42 U.S.C. § 1983 – FIRST AMENDMENT – AGAINST TROOPER LAVOIE FOR UNLAWFULLY INTERFEREING WITH MR. REYES' RIGHT TO VIDEO RECORD IN PUBLIC**

122. Plaintiff SeanPaul Reyes incorporates herein the preceding allegations of this Complaint.

123. At all relevant times herein, Mr. Reyes had rights under the First Amendment including freedom of speech and freedom of press, including the right to gather information on matters of public importance and matters relating to the conduct of public officials carrying out their public duties.

124. At all times relevant herein, Defendant Lavoie was a state actor and his conduct was subject to 42 U.S.C. § 1983.

125. By unlawfully and unjustifiably seizing Mr, Reyes' cell phone and turning off the video recording, Defendant Lavoie, acting under the color of law, prevented Mr. Reyes from engaging in his First Amendment freedoms and thereby deprived Mr. Reyes of his clearly established and well-settled rights under the First Amendment of the U.S. Constitution.

126. Defendant Lavoie subjected Mr. Reyes to these deprivations of rights either maliciously or by acting with reckless disregard for whether the Plaintiff's rights would be violated by his actions.

127. As a result of the aforementioned federal Constitutional violations, Mr. Reyes suffered injury, mental anguish, and other related injuries, losses, and damages.

WHEREFORE, Plaintiff, SeanPaul Reyes, claims against Defendant Charles Lavoie (a) compensatory damages in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), (b) punitive damages in the amount of Five Hundred Thousand Dollars ($500,000), (c) an award of reasonable attorney's fees and costs, incurred in pursuing this action, as provided under 42 U.S.C. §1988, and; (d) such other further relief to which Plaintiff may be entitled.

## COUNT 5 – VIOLATION OF 42 U.S.C. § 1983 – FOURTH AMENDMENT – AGAINST SGT. FAHEY FOR UNLAWFULLY SEIZING MR. REYES' PHONE

128. Plaintiff Sean Paul Reyes incorporates herein the preceding allegations of this Complaint.

129. At all relevant times herein, Mr. Reyes had rights under the Fourth Amendment not to have his person or property unlawfully searched, seized, detained in an unreasonable manner, not to be subjected to excessive force, not to be deprived of his liberty without due process of law, and not to be summarily punished.

130. At all times relevant herein, Defendant Fahey was a state actor, and his conduct was subject to 42 U.S.C. § 1983.

131.    By seizing Mr. Reyes phone, on July 23, 2021, without legal justification, Defendant

Fahey, acting under the color of law, deprived Mr. Reyes of his clearly established and well-

settled rights under the Fourth Amendment of the U.S. Constitution not to have his person and

property unlawfully seized and/or detained in an unreasonable manner.

132.    Defendant Fahey subjected Mr. Reyes to these deprivations of rights either maliciously or

by acting with reckless disregard for whether the Plaintiff's rights would be violated by his

actions.

133.    As a result of the aforementioned federal Constitutional violations, Mr. Reyes suffered

injury, mental anguish, and other related injuries, losses, and damages.

WHEREFORE, Plaintiff, Sean Paul Reyes, claims against Defendant Bryan Fahey (a)

compensatory damages in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00),

(b) punitive damages in the amount of Five Hundred Thousand Dollars ($500,000), (c) an award

of reasonable attorney's fees and costs, incurred in pursuing this action, as provided under 42

U.S.C. §1988, and; (d) such other further relief to which Plaintiff may be entitled.

### COUNT 6 – VIOLATION OF 42 U.S.C. § 1983 – FOURTH AMENDMENT – AGAINST SGT. FAHEY FOR UNLAWFULLY SEIZING MR. REYES' PERSON AND USING UNREASONABLE FORCE AGIANST MR. REYES.

134.    Plaintiff Sean Paul Reyes incorporates herein the preceding allegations of this Complaint.

135.    At all relevant times herein, Mr. Reyes had rights under the Fourth Amendment not to

have his person or property unlawfully searched, seized, detained in an unreasonable manner, not

to be subjected to excessive force, not to be deprived of his liberty without due process of law,

and not to be summarily punished.

136.    At all times relevant herein, Defendant Fahey was a state actor, and his conduct was

subject to 42 U.S.C. § 1983.

137.    By grabbing, pushing, and using unreasonable force against Mr. Reyes without legal justification on July 23, 2021, Defendant Fahey, acting under the color of law, seized Mr. Reyes and thereby deprived Mr. Reyes of his clearly established and well-settled rights under the Fourth Amendment of the U.S. Constitution not to have his person unlawfully seized and/or detained in an unreasonable manner.

138.    Defendant Fahey subjected Mr. Reyes to these deprivations of rights either maliciously or by acting with reckless disregard for whether the Plaintiff's rights would be violated by his actions.

139.    As a result of the aforementioned federal Constitutional violations, Mr. Reyes suffered injury, mental anguish, and other related injuries, losses, and damages.

WHEREFORE, Plaintiff, Sean Paul Reyes, claims against Defendant Bryan Fahey (a) compensatory damages in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), (b) punitive damages in the amount of Five Hundred Thousand Dollars ($500,000), (c) an award of reasonable attorney's fees and costs, incurred in pursuing this action, as provided under 42 U.S.C. §1988, and; (d) such other further relief to which Plaintiff may be entitled.

**COUNT 7 – VIOLATION OF 42 U.S.C. § 1983 – FOURTH AMENDMENT – AGAINST SGT. FAHEY FOR UNLAWFULLY SEIZING MR. REYES' PERSON AND USING UNREASONABLE FORCE AGIANST MR. REYES.**

140.    Plaintiff Sean Paul Reyes incorporates herein the preceding allegations of this Complaint.

141.    At all relevant times herein, Mr. Reyes had rights under the Fourth Amendment not to have his person or property unlawfully searched, seized, detained in an unreasonable manner, not to be subjected to excessive force, not to be deprived of his liberty without due process of law, and not to be summarily punished.

142.   At all times relevant herein, Defendant Fahey was a state actor, and his conduct was subject to 42 U.S.C. § 1983.

143.   On June 16, 2023, when Sgt. Fahey grabbed the door to the police headquarters and violently shut the door on Mr. Reyes' person, he caused the door to strike Mr. Reyes and thereby used unreasonable force against Mr. Reyes without legal justification. As such, Defendant Fahey, acting under the color of law, seized Mr. Reyes and thereby deprived Mr. Reyes of his clearly established and well-settled rights under the Fourth Amendment of the U.S. Constitution not to have his person unlawfully seized and/or detained in an unreasonable manner.

144.   Defendant Fahey subjected Mr. Reyes to these deprivations of rights either maliciously or by acting with reckless disregard for whether the Plaintiff's rights would be violated by his actions.

145.   As a result of the aforementioned federal Constitutional violations, Mr. Reyes suffered injury, mental anguish, and other related injuries, losses, and damages.

WHEREFORE, Plaintiff, Sean Paul Reyes, claims against Defendant Bryan Fahey (a) compensatory damages in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), (b) punitive damages in the amount of Five Hundred Thousand Dollars ($500,000), (c) an award of reasonable attorney's fees and costs, incurred in pursuing this action, as provided under 42 U.S.C. §1988, and; (d) such other further relief to which Plaintiff may be entitled.

## COUNT 8 – VIOLATION OF 42 U.S.C. § 1983 – FOURTH AMENDMENT – AGAINST SGT. FAHEY FOR UNLAWFULLY SEIZING MR. REYES' PHONE

146.   Plaintiff Sean Paul Reyes incorporates herein the preceding allegations of this Complaint.

147.   At all relevant times herein, Mr. Reyes had rights under the Fourth Amendment not to have his person or property unlawfully searched, seized, detained in an unreasonable manner, not

to be subjected to excessive force, not to be deprived of his liberty without due process of law, and not to be summarily punished.

148.    At all times relevant herein, Defendant Fahey was a state actor, and his conduct was subject to 42 U.S.C. § 1983.

149.    By seizing Mr. Reyes phone, on June 16, 2023, without legal justification, Defendant Fahey, acting under the color of law, deprived Mr. Reyes of his clearly established and well-settled rights under the Fourth Amendment of the U.S. Constitution not to have his person and property unlawfully seized and/or detained in an unreasonable manner.

150.    Defendant Fahey subjected Mr. Reyes to these deprivations of rights either maliciously or by acting with reckless disregard for whether the Plaintiff's rights would be violated by his actions.

151.    As a result of the aforementioned federal Constitutional violations, Mr. Reyes suffered injury, mental anguish, and other related injuries, losses, and damages.

WHEREFORE, Plaintiff, Sean Paul Reyes, claims against Defendant Bryan Fahey (a) compensatory damages in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), (b) punitive damages in the amount of Five Hundred Thousand Dollars ($500,000), (c) an award of reasonable attorney's fees and costs, incurred in pursuing this action, as provided under 42 U.S.C. §1988, and; (d) such other further relief to which Plaintiff may be entitled.

### COUNT 9 - VIOLATION OF 42 U.S.C. § 1983 - FOURTH AMENDMENT - AGAINST TROOPER LAVOIE FOR UNLAWFULLY FORCING MR. REYES TO IDENTIFY HIMSELF

152.    Plaintiff SeanPaul Reyes incorporates herein the preceding allegations of this Complaint.

153. At all relevant times herein, Mr. Reyes had rights under the Fourth Amendment not to be compelled to identify himself to police in the absence of reasonable suspicion of criminal activity.

154. At all times relevant herein, Defendant Lavoie was a state actor and his conduct was subject to 42 U.S.C. § 1983.

155. By forcing Mr. Reyes to identify himself under threat of arrest without any reasonable suspicion that Mr. Reyes had engaged in criminal activity, Defendant Lavoie, acting under color of law, deprived Mr. Reyes of his clearly established and well-settled rights under the Fourth Amendment.

156. Defendant Lavoie subjected Mr. Reyes to these deprivations of rights either maliciously or by acting with reckless disregard for whether Mr. Reyes' rights would be violated by his actions.

157. As a result of the aforementioned federal Constitutional violations, Mr. Reyes suffered injury, mental anguish, and other related injuries, losses, and damages.

WHEREFORE, Plaintiff, SeanPaul Reyes, claims against Defendant Charles Lavoie (a) compensatory damages in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), (b) punitive damages in the amount of Five Hundred Thousand Dollars ($500,000), (c) an award of reasonable attorney's fees and costs, incurred in pursuing this action, as provided under 42 U.S.C. §1988, and; (d) such other further relief to which Plaintiff may be entitled.

### COUNT 10 - VIOLATION OF 42 U.S.C. § 1983 - FIRST AMENDMENT - AGAINST OFFICER COSTELLO FOR PROHIBITING MR. REYES FROM FILMING INSIDE HEADQUARTERS

158. Plaintiff SeanPaul Reyes incorporates herein the preceding allegations of this Complaint.

159. At all relevant times herein, Mr. Reyes had rights under the First Amendment to gather information about government officials in public places and to record police activity.

160. At all times relevant herein, Defendant Costello was a state actor and his conduct was subject to 42 U.S.C. § 1983.

161. By prohibiting Mr. Reyes from filming inside the publicly accessible areas of the police headquarters on July 23, 2021, Defendant Costello, acting under color of law, prevented Mr. Reyes from exercising his clearly established First Amendment rights.

162. Defendant Costello subjected Mr. Reyes to these deprivations of rights either maliciously or by acting with reckless disregard for whether Mr. Reyes' rights would be violated by his actions.

163. As a result of the aforementioned federal Constitutional violations, Mr. Reyes suffered injury, mental anguish, and other related injuries, losses, and damages.

WHEREFORE, Plaintiff, SeanPaul Reyes, claims against Defendant Matthew Costello (a) compensatory damages in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), (b) punitive damages in the amount of Five Hundred Thousand Dollars ($500,000), (c) an award of reasonable attorney's fees and costs, incurred in pursuing this action, as provided under 42 U.S.C. §1988, and; (d) such other further relief to which Plaintiff may be entitled.

## COUNT 11 - VIOLATION OF 42 U.S.C. § 1983 - FOURTH AMENDMENT - AGAINST OFFICER COSTELLO FOR FAILING TO INTERVENE TO STOP SGT. FAHEY'S USE OF EXCESSIVE FORCE

164. Plaintiff SeanPaul Reyes incorporates herein the preceding allegations of this Complaint.

165. At all relevant times herein, Mr. Reyes had rights under the Fourth Amendment not to be subjected to excessive force by police.

166.    At all times relevant herein, Defendant Costello was a state actor and his conduct was subject to 42 U.S.C. § 1983.

167.    By failing to intervene to stop Sgt. Fahey's use of excessive force against Mr. Reyes on July 23, 2021 despite having a reasonable opportunity to do so, Defendant Costello, acting under color of law, deprived Mr. Reyes of his clearly established Fourth Amendment rights.

168.    Defendant Costello subjected Mr. Reyes to these deprivations of rights either maliciously or by acting with reckless disregard for whether Mr. Reyes' rights would be violated.

169.    As a result of the aforementioned federal Constitutional violations, Mr. Reyes suffered injury, mental anguish, and other related injuries, losses, and damages.

WHEREFORE, Plaintiff, SeanPaul Reyes, claims against Defendant Matthew Costello (a) compensatory damages in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), (b) punitive damages in the amount of Five Hundred Thousand Dollars ($500,000), (c) an award of reasonable attorney's fees and costs, incurred in pursuing this action, as provided under 42 U.S.C. §1988, and; (d) such other further relief to which Plaintiff may be entitled.

### COUNT 12 - VIOLATION OF 42 U.S.C. § 1983 - FIRST AMENDMENT - AGAINST SGT. FAHEY FOR RETALIATING AGAINST MR. REYES FOR FILMING ON JULY 23, 2021

170.    Plaintiff SeanPaul Reyes incorporates herein the preceding allegations of this Complaint.

171.    At all relevant times herein, Mr. Reyes had rights under the First Amendment to gather information about government officials in public places and to record police activity.

172.    At all times relevant herein, Defendant Fahey was a state actor and his conduct was subject to 42 U.S.C. § 1983.

173. By pushing and grabbing Mr. Reyes in response to Mr. Reyes filming him on July 23, 2021, Defendant Fahey retaliated against Mr. Reyes for engaging in activity protected by the First Amendment.

174. Defendant Fahey subjected Mr. Reyes to these deprivations of rights either maliciously or by acting with reckless disregard for whether Mr. Reyes' rights would be violated by his actions.

175. As a result of the aforementioned federal Constitutional violations, Mr. Reyes suffered injury, mental anguish, and other related injuries, losses, and damages.

WHEREFORE, Plaintiff, SeanPaul Reyes, claims against Defendant Bryan Fahey (a) compensatory damages in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), (b) punitive damages in the amount of Five Hundred Thousand Dollars ($500,000), (c) an award of reasonable attorney's fees and costs, incurred in pursuing this action, as provided under 42 U.S.C. §1988, and; (d) such other further relief to which Plaintiff may be entitled.

**COUNT 13 - VIOLATION OF 42 U.S.C. § 1983 - FIRST AMENDMENT - AGAINST SGT. FAHEY FOR DENYING MR. REYES ACCESS TO POLICE BUILDING ON JUNE 16, 2023 IN RETALIATION FOR PRIOR PROTECTED CONDUCT**

176. Plaintiff SeanPaul Reyes incorporates herein the preceding allegations of this Complaint.

177. At all relevant times herein, Mr. Reyes had rights under the First Amendment to access publicly accessible government buildings for the purpose of obtaining information and petitioning the government for redress of grievances.

178. At all times relevant herein, Defendant Fahey was a state actor and his conduct was subject to 42 U.S.C. § 1983.

179. By forcibly denying Mr. Reyes access to the publicly accessible police building on June 16, 2023, in response to Mr. Reyes exercising his First Amendment rights on July 23, 2021 and

stating his intention to obtain public records about Sgt. Fahey, Defendant Fahey unlawfully retaliated against Mr. Reyes for engaging in protected First Amendment activity.

180. Defendant Fahey subjected Mr. Reyes to these deprivations of rights either maliciously or by acting with reckless disregard for whether Mr. Reyes' rights would be violated by his actions.

181. As a result of the aforementioned federal Constitutional violations, Mr. Reyes suffered injury, mental anguish, and other related injuries, losses, and damages.

WHEREFORE, Plaintiff, SeanPaul Reyes, claims against Defendant Bryan Fahey (a) compensatory damages in an amount that exceeds Seventy-Five Thousand Dollars ($75,000.00), (b) punitive damages in the amount of Five Hundred Thousand Dollars ($500,000), (c) an award of reasonable attorney's fees and costs, incurred in pursuing this action, as provided under 42 U.S.C. §1988, and; (d) such other further relief to which Plaintiff may be entitled.


Respectfully submitted by:


                                        PLAINTIFF

                                        By: __/s/__Alexander T. Taubes
                                        Alexander T. Taubes
                                        470 James Street
                                        Suite 007
                                        New Haven, CT 06513
                                        (203) 909-0048
                                        alextt@gmail.com
                                        Juris No.: 437388