UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

SEANPAUL REYES : CIVIL NO. 3:24CV1174(MPS)

v. :

LAVOIE, ET AL. : SEPTEMBER 15, 2024

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS

### I. INTRODUCTION

Defendants Lavoie, Fahey, and Costello move to dismiss in the Plaintiff's Complaint (ECF #1) in part, pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants are entitled to qualified immunity for Plaintiff's First Amendment claims brought against them. For the reasons herein, the Defendants respectfully request that this court grant their motion and dismiss all First Amendment claims, leaving Plaintiff to proceed on his Fourth Amendment claims only.

### II. PLAINTIFF'S ALLEGATIONS

On July 9, 2024, Plaintiff commenced the instant action bringing various claims against each Defendant for alleged violations of his First and Fourth Amendment rights on two separate incident dates.  ECF #1. Plaintiff's Complaint concerns three incidents that allegedly occurred on July 23, 2021 and June 16, 2023, respectively. *Id*. at Pgs. 1-2, ¶1. Plaintiff presents himself as "an independent journalist" and "First Amendment auditor" with a focus "on matters on public interest and government transparency." *Id*. at Pgs. 3-4, ¶¶11-12.

On July 23, 2021, Plaintiff began video recording at the Bradley International Airport in Windsor Locks. ECF #1, Pg. 4, ¶16. Plaintiff chose to film in and around the Transportation Security Administration ("TSA") security checkpoint. *Id*. at Pg. 5, ¶17. First, multiple TSA officers questioned Plaintiff's actions and reason for filming and asked him to stop recording.  *Id*. at Pgs.

5-6, ¶¶21-28. While speaking with a TSA Supervisor, Defendant Lavoie, a Connecticut state trooper, approached Plaintiff. *Id*. at Pg. 7, ¶30. Defendant Lavoie asked for Plaintiff's identification, which he declined to provide and stated that multiple people at the airport alerted police and questioned what Plaintiff was doing. *Id*. at Pgs. 7-8, ¶¶32-35. Defendant Lavoie then placed Plaintiff in handcuffs, and he was detained; Plaintiff's phone was taken , which allegedly caused the recording to stop. *Id*. at Pg. 8, ¶37. Shortly after, Plaintiff was unhandcuffed and directed to the professional standards unit of the State police after he conveyed his desire to file a formal complaint against Defendant Lavoie. *Id*. at Pg. 12, ¶¶59-60.

That same day, Plaintiff traveled to Connecticut State Police Headquarters to file a complaint against Defendant Lavoie. ECF #1, Pg. 13, ¶67. Defendant Costello, a state trooper, met with Plaintiff outside of Headquarters' front door and provided him with an Internal Affairs form to fill out. *Id*. at Pgs. 13-14, ¶68. Defendant Costello then subsequently retrieved Defendant Fahey, a state police sergeant. *Id*. at Pg. 14, ¶71. Defendant Fahey explained to Plaintiff that he could "contact internal affairs department online or there is a phone number to call" and then provided him with the internal affairs division address as they are not located at Headquarters. *Id*. at Pgs. 15-16, ¶¶75, 79. A confrontation ensued between Plaintiff and Defendant Fahey. Plaintiff alleges that Defendant Fahey grabbed his cell phone, tossing it to the side causing it to stop recording, and then grabbed his shirt and pushed him towards the parking lot. *Id*. at Pgs. 16-17, ¶¶83-84. Plaintiff then left the Headquarters property. *Id* at Pg. 17, ¶88.

On June 16, 2023, Plaintiff again returned to Headquarters ostensibly to make a Freedom of Information Act "FOIA" request for Defendant Fahey's disciplinary record and recorded his subsequent interactions. ECF #1, Pg. 18, ¶89. Plaintiff told a female trooper outside of the front door his intention and Defendant Fahey alerted him that a FOIA request must be completed in

writing. *Id* at. Pg. 18, ¶¶90-91. Defendant Fahey stood in the front doorway and stated to Plaintiff that "You can't come in the building, you have no business here." *Id* at. Pg. 18, ¶93. Defendant Fahey then pulled the front door shut, which allegedly made contact with Plaintiff. *Id*. Plaintiff expressed his intention to still get into the building. *Id* at. Pg. 18, ¶94. Defendant Fahey then allegedly took Plaintiff's phone and placed it in his pocket, stopping the recording. *Id* at. Pg. 18, ¶95.

In his Complaint Plaintiff asserts fourteen separate counts against the Defendants, alleging both First and Fourth Amendment constitutional violations. Pertinent to this motion, Plaintiff alleges that these incidents give rise to First Amendment claims based upon a violation of Plaintiff's alleged "right to film" and, arising out of the two Headquarters incidents, retaliation by Defendant Fahey. Plaintiff does not assert a retaliation claim against Defendants Lavoie or Costello. Defendants deny any wrongdoing during the three incidents referenced above. This motion to dismiss the First Amendment claims only follows.

### III.   **ARGUMENT**

#### A.  **Standard of Review**

A motion to dismiss is the proper vehicle to challenge a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Qualified Immunity may be raised on a motion to dismiss because as "an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis deleted). For this reason, the Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

Fed. R. Civ. P. 12(b)(6) provides for dismissal for failure to state a claim upon which relief can be granted.  To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks & citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  In determining whether a complaint states a plausible entitlement to legal relief, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff.  *See Nechis v. Oxford Health Plans, Inc*., 421 F.3d 96, 100 (2d Cir. 2005).

This "plausibility standard" is guided by "[t]wo working principles." *Iqbal*, 556 U.S. at 678.  First, the requirement that a court accept as true the allegations in a complaint "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).  Second, to survive a motion to dismiss, the claim for relief alleged in the complaint must be plausible.  *Iqbal*, 556 U.S. at 679.  Determining whether a complaint states a plausible claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

### B.  <u>Defendants are entitled to qualified immunity for Plaintiff's First Amendment claims against them.</u>

As a general rule, state officials are entitled to qualified immunity "unless a plaintiff… show[s]… (1) that the official violated a statutory or constitutional right and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818(1982)). Even where constitutional injury

is shown, the shield of qualified immunity applies unless plaintiff can also show that the right violated was "clearly established at the time of defendant's actions." *Zalaski*, 723 F.3d 382, 388 2d Cir. 2013); *see also al-Kidd*, 563 U.S. at 735. "As the Supreme Court has explained, 'a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that *any reasonable official* in the defendant's shoes would have understood that he was violating it.'"  *Estate of Devine v. Fusaro*, No. 3:14-CV-01019(JAM), 2016 WL 183472, at *5 (D. Conn. Jan. 14, 2016) (quoting *Plumhoff v. Rickard,* 134 S. Ct. 2012, 2023 (2014)), *aff'd sub nom*.; *Estate of Devine*, 676 F. App'x 61 (2d Cir. 2017) (Summary Order).

The United States Supreme Court has expressly encouraged the use of a motion to dismiss when qualified immunity is raised as a defense. *Al-Kidd*, 131 S.Ct. 2074; *Saucier v. Katz*, 121 S.Ct. 2151, 150 L.Ed 2d 272 (2001); *Carter v. Lussier*, 955 F.2d 841, 844 (2nd Cir. 1992).  Qualified immunity for government officials serves not only as a defense from liability, but also to spare public officials from shouldering the burdens and expenses of litigation.  *Saucier,* 533 U.S. 194; *Cartier,* 955 F.2d at 844.

For purposes of qualified immunity, a right is clearly established when its "'contours . . . are sufficiently clear'" that, at the time of the challenged conduct, every "reasonable official would have understood that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Rights must be clearly established in a 'particularized' sense, rather than at a high level of generality; and such rights are only clearly established if a court can 'identify a case where an officer acting under similar circumstances' was held to have acted unconstitutionally."  *Grice v. McVeigh*, 873 F.3d 162 (2d Cir. 2017) (quoting *White v. Pauly*, 137 S. Ct. at 552, 552 (*per curiam*). "[G]eneral statements of the law are not inherently incapable of giving fair and clear

warning to officers," but "existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 137 S. Ct. at 552 (internal quotation marks omitted).

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (quoting *al–Kidd,* 563 U.S. at 742). The Supreme Court has recently "reiterate[d] the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White*, 137 S. Ct. at 551–52(citation omitted); see also *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017); *Mullenix v. Luna,* 136 S. Ct. 305 (2015); *Taylor v. Barkes*, 135 S. Ct. 2042 (2015). "The dispositive question is 'whether the violative nature of the *particular* conduct is clearly established.'" *Mullenix,* 136 S. Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 742). "The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." *Coollick v. Hughes*, 699 F.3d 211, 220 (2d Cir. 2012) (quotations omitted). To establish that a right was "clearly established," the plaintiff must be able to cite either a decision from the Supreme Court or the controlling Circuit Court. *City and County of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1778 (2015); see also *Taylor,* 135 S. Ct. at 2044.

Where, as here, the right at issue arises in the context of issues confronting law enforcement officials, and the court determines that a right was clearly established, the officers may still be entitled to qualified immunity "if ... it was objectively reasonable for them to believe their acts did not violate those rights." *Oliveira v. Mayer*, 23 F.3d 642, 648 (2d Cir.1994), *cert. denied,* 513 U.S. 1076, (1995); *see, e.g., Anderson*, 483 U.S. at 639–40. The qualified immunity test is an objective one. "[I]f officers of reasonable competence could disagree, immunity should be recognized." *Malley v. Briggs,* 475 U.S. 335 (1986) (qualified immunity leaves ample room for mistaken

judgments); *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007). Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law, or those who act where 'the law clearly proscribed the actions' taken." *Saucier,* 533 U.S. 194, (quoting *Anderson*, 483 U.S. at 638–39).

This aspect of the doctrine of qualified immunity recognizes that law enforcement officers are only human, and inevitably, accidents and mistakes of judgment will happen.  Such mistakes alone do not open officers to personal liability.  *Wren v. Towe*, 130 F.3d 1154, 1159 (5th Cir. 1997), *cert. denied,* 525 U.S. 815 (1998); accord, *Pritchett v. Alford,* 973 F.2d 307, 313 (4th Cir. 1992) (indicating that qualified immunity affords tolerance for mistakes of judgment traceable to unsettled law, faulty information, or contextual exigencies). Thus, in order to defeat qualified immunity, the Supreme Court has stressed the need to "identify a case where an officer acting under similar circumstances" was held to have violated the plaintiff's rights. *White v. Pauly*, 137 S. Ct. at 552. "'A body of relevant case law' is usually necessary to 'clearly establish' the answer" with respect to a clearly established right. *Al–Kidd, supra*, 563 U.S. 731.

### 1.  Defendants did not violate any clearly established First Amendment rights.

Here, no case, and certainly no body of relevant case law, clearly defines the contours of the Plaintiff's First Amendment rights allegedly violated by the Defendants with reasonable specificity. In order for a right to be clearly established, generally, a plaintiff must be able to point to a case from the Second Circuit or Supreme Court where an officer acting in similar circumstances was found to have violated a plaintiff's rights. *City and County of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1778 (2015); *see also Taylo*r, 135 S. Ct. at 2044. Any right must be defined "in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S. Ct. at 308; See also *City of Escondido, Cal. v. Emmon*s, 139 S. Ct. 500, 503 (2019); *Kisela*

*v. Hughes*, 138 S. Ct. 1148, 1153 (2018). Plaintiff here cannot do so, because no such case exists, mandating qualified immunity for the Defendants on his First Amendment claims.

Neither the Second Circuit nor the Supreme Court has considered whether video recording at an airport security checkpoint or a police headquarters administrative office building is protected by the First Amendment, and no case from either Court has found an officer liable for restricting filming in either location. Indeed, no case from either Court has even struck down any filming restrictions in airports generally, and to the extent they have considered cases involving restrictions on other First Amendment activities in airports or government building lobbies, such policies have typically been upheld under the First Amendment. This alone is sufficient to demonstrate the Defendants here have not violated any clearly established First Amendment rights. To the extent other Circuit courts or District courts within or outside of the Second Circuit have considered these issues, several have found that officers acting in similar circumstances did not commit First Amendment violations, or that restricting filming in similar locations was not violative of the constitution. In the absence of controlling authority establishing otherwise in a similar factual situation and as more fully discussed below, Plaintiff's First Amendment claims are barred by qualified immunity.

i.    **Plaintiff has no clearly established right to film at a security checkpoint in an airport.**

To determine whether the Defendants are entitled to qualified immunity, "the circumstances with which they were confronted" must be considered. *Anderson*, 483 U.S., at 640. Plaintiff here admits that in the first incident, on July 23, 2021, he was "video recording in and around the security checkpoints" at Bradley International Airport, a sensitive and restricted area in which passengers undergo a security screening before entering the secure area of the airport. ECF # 1, Pg. 5, ¶ 20. Shortly after he began filming, a TSA officer approached Plaintiff and questioned his

reasons for filming. Id., ¶¶ 22-28. Defendant Lavoie, a state trooper, approached Plaintiff thereafter and questioned his business at the airport, mentioning that several individuals at the airport had reported and questioned what Plaintiff was doing and noted Plaintiff was "causing alarm at the airport." Id., ¶¶ 30-34. After detaining Plaintiff, Lavoie placed Plaintiff's phone down and allegedly stopped the recording. Id. ¶ 37. Plaintiff claims that this amounted to a violation of his First Amendment rights by stopping him from filming the security checkpoint.

There is no case from the Second Circuit or Supreme Court that has addressed whether an officer acting in similar circumstances violated a plaintiff's First Amendment rights. There has been no case from either Court addressing video recording or filming in an airport generally, nor video recording or filming at an airport security checkpoint more specifically. Neither has there been any case the undersigned can locate from either Court involving individual liability for a police officer restricting any other First Amendment activities at an airport security checkpoint, nor one finding a First Amendment violation for restricting filming in such a location. Critically, there has not been any controlling case addressing any of these critical particularized facts, let alone one finding a violation involving all of them.

To the contrary, the primary case from the Supreme Court which addresses First Amendment activities in airports at all—albeit not filming, and not at a security checkpoint, both being crucial facts here—is *Int'l Soc'y for Krishna Consciousness v. Lee,* 505 U.S. 672, 686 (1992) ("*ISKCON*"), which originated in the Second Circuit.[1] There, the Court considered restrictions on pamphlets and solicitation by a non-profit religious corporation in New York airports. Applying the forum analysis, the Supreme Court found that airports are non-public fora, and that a restriction

---

[1]The Supreme Court also considered restrictions of First Amendment activities in airports several years prior in *Bd. of Airport Comm'rs v. Jews for Jesu*s, 482 U.S. 569, 570 (1987), but the analysis hinged on overbreadth of a policy, which is not at issue in the instant case, as no policy is being challenged. Thus, it is not relevant to the qualified immunity analysis here.

banning solicitation in airport terminals—not security checkpoints—did *not* violate the First Amendment. *Id.* at 691. In *ISKCON*, the Court did not consider the actions of a law enforcement officer, nor did it consider the First Amendment or security and privacy implications of video recording, nor did it consider exercise of First Amendment activities at a security checkpoint. Instead, it considered the constitutionality of a specific policy set forth by the Port Authority, not an individual capacity claim for money damages. Nonetheless, it still upheld that policy. Given the disparity in the facts of *ISKCON* and the instant case, *ISKCON* does not clearly establish any right for purposes of qualified immunity in this case. *ISKCON* does, however, hold that airports are non-public fora where First Amendment rights may be restricted, and no reasonable officer reading ISKCON would know, "beyond debate," that stopping someone from video recording a security checkpoint violates the Constitution. *White*, 137 S. Ct. at 552, 551.

Out of circuit authority, while not dispositive of the qualified immunity inquiry, remains instructive. Only two Circuit courts have addressed the question of video recording at airport security checkpoints in the context of a First Amendment claim. The split between these two authorities on the topic further underscores Defendant Lavoie's entitlement to qualified immunity. "While a consensus of cases of persuasive authority may clearly establish a right for qualified immunity purposes, the inverse is also true: if there are no cases of controlling authority in the jurisdiction in question, and if other appellate federal courts have split on the question of whether an asserted right exists, the right cannot be clearly established for qualified immunity purposes." *Rogers v. Pendleton*, 249 F.3d 279, 287-88 (4th Cir. 2001) (citing *Wilson*, 526 U.S. at 618 for the proposition that "[i]f judges . . . disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.")); See also *Gates v. Khokha*r, 884 F.3d 1290, 1303 (11th Cir. 2018) ("That judges disagree about a constitutional issue is itself

evidence that a right is insufficiently clearly established for purposes of denying qualified immunity.") (citing *Wilson,* 526 U.S. at 618); *Crawford v. Cuomo*, 721 Fed. Appx. 57, 59-60 (2d Cir. 2018) (rejecting argument that "out-of-circuit authorities 'clearly foreshadowed'" the right at issue as the "out-of-circuit authority was, at the time, sharply divided").

In *Dyer v. Smith*, 56 F.4th 271, 278 (4th Cir. 2022), the Fourth Circuit considered a claim brought by a plaintiff who attempted to record the pat down search of his husband at a TSA checkpoint in an airport. While he tried to do so, TSA agents ordered him to stop filming the interaction and later ordered him to delete his video of the same.  The plaintiff argued those actions violated his First Amendment rights. The Fourth Circuit ultimately did not rule upon the merits of the First Amendment claim or the defendants' qualified immunity analysis, instead declining to extend a *Bivens* remedy under the alleged circumstances and remanding the case for dismissal for that reason. *Id.*

The Tenth Circuit considered a case much more on point to the instant action. Indeed, it addressed a nearly identical claim to the one alleged here, at the motion to dismiss stage. In *Mocek v. City of Albuquerque*, 813 F.3d 912, 930 (10th Cir. 2015), the plaintiff had been video recording TSA agents and refused to identify himself; he was eventually arrested by police for disorderly conduct. At some point, the police officers confiscated the plaintiff's camera and deleted the recordings.[2] *Id.* The plaintiff sued both the TSA agents and the police officers for First and Fourth Amendment violations. The district court there determined that the plaintiff's First Amendment claim should be dismissed on the merits for failure to state a claim. *Id.* It went on to hold that the defendant officers would also be entitled to qualified immunity based solely upon the complaint, in part because it was not clearly established the defendants' actions in stopping the plaintiff from

---

[2]Plaintiff here, in contrast, does not allege that anyone deleted his recordings; to the contrary, he was allowed to continue recording once Trooper Lavoie's investigation was concluded. *See* ECF #1, ¶65.

filming an airport security checkpoint, and deleting recordings of the same, amounted to a First Amendment violation.[3] *Mocek v. City of Albuquerque,* 3 F. Supp. 3d 1002, 1069 (D.N.M. 2014). The district court noted that "[r]ather than the 'free expression of ideas,' the primary purpose of a screening checkpoint is the facilitation of passenger safety on commercial airline flights, and the safety of buildings and of the people for whom a plane can become a dangerous weapons." *Id.* The court analyzed *ISKCON*, and explained that there, "the Supreme Court found that a ban on the plaintiffs' distribution of their organization's literature and solicitation of funds for the organization was reasonable in an airport terminal, and Mocek's silent recording [wa]s much less expressive of a viewpoint." *Id.* at 1073. Based upon *ISKCON*, the district court determined the plaintiff had failed to state a claim for a First Amendment violation. *Id.* Further, the district court found that as to the police defendants, they were entitled to qualified immunity because out of circuit authority was not "'sufficiently clear that every reasonable official would have understood' that ordering Mocek to stop recording at the screening checkpoint -- and then enforcing that order by investigating Mocek, and demanding his ID -- would violate his First Amendment right." *Id.* at 1075.

On appeal, the Tenth Circuit affirmed, noting the "uniquely sensitive setting" that airport security checkpoints pose. *Mocek,* 813 F.3d at 924. "Order and security are of obvious importance at an airport security checkpoint… As a result, conduct that is relatively benign elsewhere might work to disturb the peace at these locations. Many travelers are tense, no one enjoys the screening process, and people are in various states of disrobing and adjusting clothing without a modicum of privacy." *Id.* at 924. It noted that "[a]s a result, conduct that is relatively benign elsewhere might

---

[3] The district court in *Mocek* also dismissed the plaintiff's claims of false arrest and Fourth Amendment violation based upon arrest for failure to identify himself as barred by qualified immunity. Though Plaintiff here raises similar claims, they are not at issue in this motion.

work to disturb the peace at these locations," that, "[f]rom a reasonable officer's perspective, [the plaintiff's] filming may have invaded the privacy of other travelers or posed a security threat, insofar as it could have been used to circumvent or expose TSA procedures," and that "[t]he possibility that he had malign intentions raised the likelihood that his conduct would compromise orderly operations at the checkpoint," as "did the chance that he was violating TSA regulations against interfering with security systems or personnel," including "resisting the agents' attempts to identify him." *Id*. The Tenth Circuit went on to note that airports are a non-public forum, and that to the extent the plaintiff relied on cases involving recording police activity in public forums, even if the court agreed there was a clearly established "right to record law enforcement officers in *public*, we would still need to determine whether that conduct is protected at an airport security checkpoint." *Id.,* at 931 (emphasis in original). Ultimately, the Tenth Circuit affirmed the decision of the district court.

Just as the officers in *Mocek* were entitled to qualified immunity for the plaintiff's First Amendment claims, Defendant Lavoie here is similarly entitled to immunity. There is no case from the Second Circuit or the Supreme Court that squarely addresses the contours of any right to film or video record at airport security checkpoints. Neither does out of circuit authority clearly establish that Defendant Lavoie's conduct was unconstitutional; rather, the only circuit court to consider an identical case found similar conduct to be permissible.

It is anticipated that Plaintiff may argue that the TSA has published it generally permits video recording in airports, as denoted in his Complaint, and that renders it obvious to any officer that he was permitted to film on July 23, 2021. However, this is immaterial for purposes of qualified immunity, as internal policies do not clearly establish federal constitutional rights, just like state statutes. *Tooly v. Schwaller*, 919 F.3d 165, 172 (2d Cir. 2019) ("statute does not serve as

'clearly established law' for purposes of qualified immunity"); see also *Brown v. City of New York,* 798 F.3d 94, 100 (2d Cir. 2015) ("A defense of qualified immunity is not displaced by a violation of state law requirements."). Nonetheless, even looking at non-binding internal policy, though the TSA publishes a policy regarding filming, the Connecticut Airport Authority ("CAA") has a differing policy. As Plaintiff admits, Bradley International Airport is owned and operated by the CAA. ECF #1, Pg. 4, ¶16. The CAA forbids filming or taking photographs at any security checkpoint at Bradley International Airport and requires advance permission for "filming near a security checkpoint." *See* https://bradleyairport.com/about/media/media-access/ *last accessed on September 11, 2024*. Plaintiff here was undisputedly in violation of CAA's policy, as he claims to be a "journalist" but does not allege that he ever sought the requisite advance permission to film "in and around" the security checkpoints. Given the competing policies of various agencies operating within the airport, and in light of the existing law at the time, it cannot be said that it would be obvious to "*every reasonable official*" in Defendant Lavoie's shoes that Plaintiff was permitted to film at a security checkpoint. *Wesby*, 138 S. Ct. at 589-90

More importantly, given the only Circuit Court to substantively consider a claim under nearly identical circumstances affirmed a finding of no constitutional violation, it is not "beyond debate" that restricting Plaintiff's filming at an airport security checkpoint amounted to a First Amendment violation. "[A]n official loses qualified immunity only for violating clearly established law," *Ziglar,* 582 U.S. 120, 151, and "'in the light of pre-existing law,' the unlawfulness of the officer's conduct 'must be apparent.'" *Id.* at 151 (quoting *Anderson*, 483 U.S. 635, 640). Plaintiff cannot point to any pre-existing law in similar circumstances finding similar conduct unconstitutional, which would have put Defendant Lavoie on notice that his conduct could be unconstitutional. Any reasonable officer reading *ISKCON* and *Mocek*—without any guidance from

14

the Second Circuit—would believe their actions to be entirely appropriate and constitutional in the circumstances alleged here at the Bradley International Airport TSA checkpoint.

"In such circumstances, where the precedent is simply not clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply, the qualified immunity bar applies." *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 191 (2d Cir. 2020) (citing *Wesby*, 138 S. Ct. at 589-90). It is not clearly established that Defendant Lavoie's conduct in restricting Plaintiff's video recording at an airport security checkpoint is violative of the First Amendment. Accordingly, he is entitled to qualified immunity for this claim and it should be dismissed.

### ii. Plaintiff has no clearly established right to film in the lobby of the DESPP headquarters office building.

Plaintiff also brings a First Amendment claim against Defendants Fahey and Costello arising out of an incident in which he attempted to video record in the lobby of the DESPP Headquarters office building on July 23, 2021, and a subsequent incident in which Plaintiff claims he was denied access to the building on June 16, 2023. *See* ECF # 1, Pgs. 13-17.[4] Similarly to airport security checkpoints, there is no case from the Supreme Court or Second Circuit addressing the contours of any right to film in a police or government headquarters lobby, let alone a case from either court finding an individual officer liable for a First Amendment violation for enforcing a restriction on filming in such a location. For this reason, it is not clearly established that Defendants' Costello and Fahey violated Plaintiff's First Amendment rights by not allowing him to film inside DESPP Headquarters office building. *Liberian Cmty. Ass'n of Conn.*, 970 F.3d 174,

---

[4]Plaintiff does not bring an independent First Amendment right of access claim to the DESPP lobby; rather, he brings a claim of retaliation against Defendant Fahey. Plaintiff alleges Fahey denying him access to the building amounted to retaliation for other protected conduct: namely, filming and making a public records request. ECF #1., Pgs. 31-33, ¶¶170-181.

186 (a lack of controlling authority or robust consensus of persuasive authority demonstrates law
is not clearly established).

To the extent other courts have considered First Amendment activities in police precinct
or police lobbies, as well as other government office building lobbies, they have generally found
restrictions in such locations to be constitutional, further demonstrating Defendants' Fahey and
Costello's entitlement to qualified immunity on this claim. Within this Circuit, several district
courts have considered the constitutionality of a ban on filming in New York Police Department
police precincts and upheld such bans under the First Amendment. In *Reyes v. City of N.Y.*, No.
23-CV-6369 (JGLC), 2023 U.S. Dist. LEXIS 196602, at \*30 (S.D.N.Y. Nov. 2, 2023), a case
brought by the same Plaintiff here, the court considered such a ban at the preliminary injunction
stage, and found that he could not demonstrate a likelihood of success on the merits of his First
Amendment claim, deeming police precinct lobbies limited public fora and finding a ban on
filming there was constitutional. Similarly, in *Rodney v. City of N.Y.,* No. 22-CV-1445 (LAK)
(OTW), 2023 U.S. Dist. LEXIS 223117, at \*14 (S.D.N.Y. Dec. 14, 2023) the court considered
whether police precinct lobbies were potentially nonpublic fora but determined that regardless of
whether they were nonpublic or limited public fora, restrictions on filming in police precinct
lobbies were constitutional. The court dismissed the First Amendment claims stemming from
restrictions on filming in police precinct lobbies. *Id.*

In both cases, the courts noted the somewhat more public nature of police precinct lobbies,
explaining that "[p]olice precinct lobbies are areas generally used by members of the public to
reports crimes and obtain information from law enforcement. The lobbies are open to the street or
to a small vestibule that opens to the street and are accessible to the public twenty-four hours per
day." *Reyes*, 2023 U.S. Dist. LEXIS 196602, at \*20. Plaintiff here, in contrast, alleges he attempted

to film at the DESPP Headquarters office building, which is not a police precinct lobby..[5] DESPP

Headquarters also houses the special licensing and firearms unit, where the public may apply for

pistol permits,[6] and the sex offender registry, where sex offenders must register their personal

details.        *See*        https://portal.ct.gov/despp/division-of-state-police/special-licensing-and-

firearms/state-pistol-permit,    *last    accessed    on    September    12,    2024*;

https://sheriffalerts.com/cap_contact.php?office=54567 *last accessed on September 12, 2024.*

Thus, Plaintiff has even less of a clear right to film at DESPP Headquarters as compared to a

precinct lobby, and *Reyes* and *Rodney* further underscore Defendants' Fahey and Costello's

entitlement to qualified immunity here.

The Tenth Circuit has also held that it is not clearly established that a restriction on filming

in a police precinct lobby amounts to a First Amendment violation, as Plaintiff here urges. In

*Brandt v. Crone*, No. 21-1093, 2022 U.S. App. LEXIS 8104, at *1 (10th Cir. Mar. 28, 2022), the

Tenth Circuit considered a case where a YouTuber entered a Sherriff's Department lobby, began

filming and making loud disparaging remarks about the department in the lobby. The Tenth Circuit

found that the Sheriff who stopped the plaintiff from filming there was entitled to qualified

immunity, noting as of that time, "[w]e are aware of no Tenth Circuit or Supreme Court case, or a

clear weight of authority from other courts, addressing the unique character of a location such as

a Sheriff's Department's lobby and the attendant First Amendment limitations…" *Id.,* at *9. The

Tenth Circuit ultimately determined that as a result, the Sherriff was entitled to qualified immunity

on the plaintiff's free speech claims. *Id.* The same holds true now. There remains no Supreme

Court or Second Circuit case that clearly establishes a right to film in a police headquarters lobby

---

[5]See e.g. ECF #1, Pgs. 15-15, ¶¶78-79 (Defendant Fahey explained internal affairs complaints should be properly directed to the internal affairs division housed in a different location and DESPP Headquarters does not take any and all citizen complaints).
[6]Pistol permit applicant information is confidential under Connecticut law. *See* Conn. Gen. Stat. § 29-28.

office building, or clearly establishes that Defendants Fahey or Costello's actions were unconstitutional infringements upon Plaintiff's right to freedom of speech.

Further, as noted above, the DESPP Headquarters office building is less akin to a police precinct lobby than it may be to a government office building. While there are no cases directly considering a police headquarters office building lobby, many courts have considered First Amendment rights in government office buildings and lobbies and routinely upheld restrictions on First Amendment activities in such locations. For example, in *Make the Rd. by Walking, Inc. v. Turner,* 378 F.3d 133, 140 (2d Cir. 2004), the Second Circuit considered restrictions on First amendment activities in Social Services Center waiting rooms. The court determined that such locations were non-public fora and upheld a ban on access to such locations without official business in the location, which amounted to a restriction on exercise of First Amendment activities by advocacy organizations. *Id.* at 151.

Numerous other Circuit Courts and district courts have routinely upheld restrictions on First Amendment activities, like filming, in government office buildings and lobbies, which have generally been determined to be non-public fora. See, e.g., *Freedom Found. v. Wash. Dep't of Ecology,* 840 F. App'x 903, 904 (9th Cir. 2020) (upholding restrictions on first amendment activities in lobby of Washington state Department of Ecology headquarters lobby); *Fams. Achieving Indep. & Respect v. Neb. Dep't of Soc. Servs.,* 111 F.3d 1408, 1419 (8th Cir. 1997) (stating that the lobby of a social services office was not a public forum because its primary purpose was to provide services to welfare recipients rather than foster the exchange of ideas, upholding restrictions); *Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998) (holding that the courthouse lobby was a nonpublic forum, upholding restrictions there); *Porter v. City of Phila.*, 975 F.3d 374, 388 (3d Cir. 2020) (upholding policy prohibiting comments in Sherriff's office

during Sherriff's sales auctions, despite welcoming of public into Sherriff's office during such sales); *Helms v. George Zubaty,* 495 F.3d 252, 257 (6th Cir. 2007) (upholding restrictions on speech in judge's office and common lobby reception area, despite "open door policy" of judge); *Sammartano v. First Judicial Dist. Court,* 303 F.3d 959, 966 (9th Cir. 2002)  (upholding restrictions in judicial and municipal complexes); *Claudio v. United States*, 836 F. Supp. 1230, 1236 (E.D.N.C. 1993) (upholding restrictions in federal building lobby); *Miller v. City of Cincinnati,* No. 1:08cv550, 2008 U.S. Dist. LEXIS 64393, at *15 (S.D. Ohio Aug. 19, 2008) (upholding restrictions in city hall lobby and stairwell); *McKay v. Federspiel,* No. 14-cv-10252, 2014 U.S. Dist. LEXIS 171149, at *34 (E.D. Mich. Dec. 11, 2014) (upholding electronics ban in municipal buildings, including lobbies); *Caractor v. City of N.Y. Dep't of Homeless Servs*., 2013 U.S. Dist. LEXIS 84815, at *20 (S.D.N.Y. June 14, 2013) (upholding restrictions in homeless center lobbies). These cases only further substantiate Defendant Fahey and Costello's entitlement to immunity.

Given that no controlling authority has considered, let alone clearly defined, the contours of any right to film in a police headquarters' lobby, Defendants Fahey and Costello are entitled to qualified immunity. In light of the *Reyes, Rodney,* and *Brandt* cases, all upholding restrictions on filming in police precinct lobbies, and the many cases upholding restrictions on First Amendment activities in government lobbies, it cannot be said that "*every reasonable official*" would believe preventing Plaintiff from filming at DESPP Headquarters could amount to a First Amendment violation. *Wesby,* 138 S. Ct. at 589-90 (emphasis added). Public officials cannot be expected "to predict the future course of constitutional law" based on their reading of a handful of non-precedential opinions, especially where those opinions support their actions rather than the Plaintiff's claim. *Wilson*, 526 U.S. at 617-18 (quoting *Procunier v. Navarette*, 434 U.S. 555, 562

(1978)). It is "unfair" to subject such officials to damages liability when even "judges . . . disagree" and where Plaintiff's argument runs contrary to the existing law. *Id.* at 618.

As to Plaintiff's free speech and free access First Amendment claims, Defendants are entitled to qualified immunity because the law is not clearly established, and this Court should grant their motion to dismiss these claims for all the foregoing reasons.

**2.  It is not clearly established that Plaintiff was engaged in protected conduct; thus, Plaintiff's retaliation claims are barred.**

To prevail on a First Amendment retaliation claim, a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendants' actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions effectively chilled the exercise of his First Amendment right. *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013); *Curley,* 268 F.3d at 73. To state a First Amendment retaliation claim, Plaintiff must show "that his conduct is deserving of First Amendment protection and that the defendants' conduct [] was motivated by or substantially caused by his exercise of free speech." *Rattner v. Netburn*, 930 F.2d 204, 208 (2d Cir. 1991) (quoting *Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 58 (2d Cir. 1987)); see also *Dorsett* 732 F.3d 157, 160 (2d Cir. 2013).

Plaintiff here brings two retaliation claims only against Defendant Fahey, arising out of the incidents on July 23, 2021 and June 16, 2023 at DESPP Headquarters. Plaintiff claims that on the first date, Defendant Fahey retaliated against him by stopping him from filming, and that he did this in response to Plaintiff "engaging in activity protected by the First Amendment." ECF #1, Pg. 31-32. In the next paragraph, Plaintiff states Defendant Fahey's actions were in response to Plaintiff's "filming." *Id*., Pg. 32. Plaintiff then goes on to allege that Defendant Fahey refused him entry to the DESPP Headquarters lobby building on June 16, 2023, in retaliation for "exercising his First Amendment rights on July 23, 2021 and stating his intention to obtain public records

about Sgt. Fahey." *Id.*, Pgs. 32-33. Thus, Plaintiff alleges he was retaliated against for two types of allegedly protected conduct: attempting to film in the DESPP headquarters lobby and making a public records request about Sgt. Fahey. Both Plaintiff's retaliation claims fail because it is not clearly established that video recording at DESPP Headquarters lobby is a protected activity under the First Amendment, nor is it clearly established that making a request for public records is protected activity that may give rise to a First Amendment claim.

First, while freedom of speech and expression are clearly established constitutional freedoms, the right of the public to photograph, record, or document happenings in and the scope of that potential right at a police headquarters office building lobby are not clear, as discussed at length *supra*. By claiming that video recording in such a location is *per se* a protected activity in all contexts, Plaintiff is asking this Court to expand the First Amendment beyond the contours established by the Supreme Court and the Second Circuit. This Court should decline to do so for the reasons discussed above. Because it is not clearly established that such conduct is protected, it is not clearly established that such conduct may serve as "protected conduct" for purposes of a First Amendment claim, and Plaintiff's two retaliation claims, relying upon such conduct for the first element, should be dismissed.

Second, it is similarly not clearly established that making a public records request amounts to protected conduct under the First Amendment. Neither the Second Circuit nor the Supreme Court has held that public records requests amount to protected conduct. Indeed, several district courts have considered FOI requests in different contexts and are split on when such requests amount to protected conduct. See, e.g., *Ward v. Lee*, No. 9:16-CV-1224 (FJS/CFH), 2018 U.S. Dist. LEXIS 111977, at *17 n.8 (N.D.N.Y. July 3, 2018) ("[i]t is unclear whether an *inmate's* filing of a FOIA request constitutes protected conduct."); *McAvey v. Orange-Ulster BOCES*, 805 F.

Supp. 2d 30, 39 (S.D.N.Y. 2011) (considering whether FOI request by a public employee was protected conduct or not, determined it was protected conduct if employee was engaged in citizen speech, not employment speech). The Sixth Circuit has also considered this issue and has suggested that a complaint against police *combined with* a records request would amount to protected conduct but did not consider a records request alone. *See Rudd v. City of Norton Shores,* 977 F.3d 503, 514 (6th Cir. 2020). Given the lack of authority clearly establishing that a records request, alone, can constitute protected conduct for purposes of a retaliation claim, Defendant Fahey is entitled to qualified immunity on Count 13 to the extent it relies upon a records request as protected conduct as well.

Ultimately, Plaintiff cannot demonstrate that it is clearly established that either filming at DESPP headquarters lobby or filing a records request amounts to protected conduct. In the absence of a case clearly establishing otherwise, Defendant Fahey is entitled to immunity on both of Plaintiff's retaliation claims, and they must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons this Court should grant the Defendants' partial motion to dismiss, dismiss Plaintiff's First Amendment claims against them, and permit only Plaintiff's several Fourth Amendment claims to proceed.

DEFENDANT
Lavoie, et al.

WILLIAM TONG
ATTORNEY GENERAL

BY: _/s/ *Samantha C. Wong*_____
      Samantha C. Wong
      Assistant Attorney General
      165 Capitol Avenue
      Hartford, CT 06106
      Federal Bar #ct30974
      E-Mail:  samantha.wong@ct.gov
      Tel.:  (860) 808-5450
      Fax:  (860) 808-5591


BY: _/s/ *Janelle R. Medeiros*____
      Janelle R. Medeiros
      Assistant Attorney General
      165 Capitol Avenue
      Hartford, CT 06106
      Federal Bar #ct30514
      E-Mail:  janelle.medeiros@ct.gov
      Tel.:  (860) 808-5450
      Fax:  (860) 808-5591


## **CERTIFICATION**

      I hereby certify that on September 16, 2024, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


      _/s/ Samantha C. Wong_____
      Samantha C. Wong
      Assistant Attorney General