UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SEANPAUL REYES : | |
| *Plaintiff,* : | |
| : | Civil Action No: 3:24-cv-1174-MPS |
| v. : | |
| : | |
| CHARLES LAVOIE, ET AL., : | |
| *Defendants.* : | May 8, 2025 |

**PLAINTIFF'S PARTIAL OBJECTION TO
DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Plaintiff SeanPaul Reyes respectfully opposes Defendants' Motion for Protective Order [ECF No. 37] to the extent it seeks to permanently restrict dissemination of deposition materials beyond the pendency of this litigation. While Plaintiff has no objection to restrictions during the litigation, the perpetual limitations sought by Defendants are unsupported by law, exceed the scope of the Court's authority, and contravene important public interests in transparency regarding civil rights matters involving state actors. Moreover, because Connecticut's Freedom of Information Act (FOIA), Conn. Gen. Stat. § 1-200 et seq., will ultimately render the materials public anyway, Defendants' asserted privacy or safety concerns cannot justify a perpetual seal. Finally, empirical research demonstrates that if the Court's default rule post-litigation is secrecy—rather than transparency—this would affect settlement incentives in a manner that disfavors judicial economy in civil rights matters. For the reasons below, the Court should limit any protective order to the duration of this case only and decline to impose post-litigation restrictions on Plaintiff's use of discovery materials.

**ARGUMENT**

I. **Plaintiff Consents to a Protective Order Limited to the Pendency of Litigation, Which Alleviates All Legitimate Pretrial Publicity Concerns Raised by Defendants**

Plaintiff agrees to reasonable restrictions on the dissemination of deposition materials during the pendency of this litigation. This concession addresses every legitimate concern articulated in Defendants' motion, including their expressed concerns about jury pool tainting, potential misuse of video clips, and purported risks of "annoyance, embarrassment, oppression, or undue burden." By restricting dissemination of deposition videos/transcripts only until trial or resolution, the Court can eliminate any risk of tainting the jury pool or influencing witnesses before trial. Concerns about pretrial publicity and fair trial rights are limited to the pretrial phase; once a trial is over (or the case is otherwise resolved), those concerns no longer apply. The sole legitimate purpose of the discovery order – preventing an unfair trial – is fully served by a temporary order ending when the litigation ends. After that point, there will be no jury to protect and no ongoing proceeding to be prejudiced.

Indeed, the authority Defendants cite, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), holds only that courts may restrict dissemination "in the context of pretrial civil discovery" to prevent discovery abuse. *Id.* at 37. Nothing in *Seattle Times* or Rule 26 suggests that a court can extend a discovery order beyond the life of the case when the justification for nondisclosure (ensuring an impartial trial) has evaporated. To do so would transform a narrow pretrial safeguard into a perpetual order with First Amendment implications. *Id.* ("We therefore hold that where, as in this case, a protective order is entered on a showing of good cause as required by Rule 26(c), *is limited to the context of pretrial civil discovery*, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment.") (emphasis added).

A temporally limited protective order fully satisfies the "modest" and "low hurdle" of good cause referenced in *Haidon v. Town of Bloomfield*, No. 3:19-cv-119 (SRU), 2021 U.S. Dist. LEXIS 137498, at *16 (D. Conn. July 23, 2021). Defendants' principal concerns—potential jury tainting and misuse during litigation—are rendered moot by a protective order that remains in effect until the conclusion of proceedings. As such, their request for perpetual restrictions exceeds what is necessary to address their stated concerns and is unsupported by the "good cause" standard of Fed. R. Civ. P. 26(c).

    **II.    The Court Lacks Authority to Issue an Advisory Opinion Regarding Post-Litigation Restrictions on Materials**

The Court's authority under Rule 26(c) to issue protective orders is circumscribed by the requirement that such orders govern discovery in pending litigation. Extending restrictions beyond the conclusion of proceedings constitutes an impermissible advisory opinion outside the proper scope of Article III. As the Supreme Court has consistently held, federal courts lack jurisdiction to "decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971). Issuing an order now to govern the parties' conduct after the case ends would effectively be an advisory opinion about a hypothetical future dispute; in other words, it is not ripe for adjudication.

Crucially, at this juncture the Court cannot even know the posture in which post-litigation dissemination issues might arise. For example, if discovery materials are introduced at trial or filed on the docket, they will become judicial records presumptively open to the public. Deciding now that Plaintiff must never publicly share discovery – regardless of context – requires the Court to speculate about future events. That is one reason why advisory opinions are disfavored.

In contrast, the sensible approach is to decline to issue any post-litigation order. If Defendants truly believe some exceptional reason arises after the case to continue sealing (for

instance, a concrete threat to safety or privacy beyond what the public interest would tolerate), they could seek appropriate relief at that time. But unless and until such a scenario materializes, the Court should not preemptively impose a perpetual confidentiality mandate. The proper procedural mechanism for addressing post-litigation concerns is for Defendants to seek a continuation of the protective order at the conclusion of proceedings, at which point the Court can evaluate whether circumstances still warrant restrictions.

### III. This Case is Distinguishable From Those Cited by Defendants Based on the Strong Public Interest in Transparency Regarding Civil Rights Claims Against State Actors

The cases cited by Defendants are distinguishable from the present matter in that this litigation involves allegations of civil rights violations committed by state actors under color of law—the type of matter where public transparency serves the public interest. Although some of the prior cases involved public officials and matters of public concern, it appears that none of the matters cited involved as great an amount of public interest as this case and that the public's interest in transparency was not sufficiently raised as a factor. Civil rights cases against government officials implicate heightened public interests that weigh against protective orders, especially an order that purports to extend beyond the litigation itself.

As the Third Circuit said in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 788 (3d Cir. 1994), "[a] factor which a court should consider in conducting the good cause balancing test is whether a party benefiting from the order of confidentiality is a public entity or official." When a matter "involves issues or parties of a public nature, and involves matters of legitimate public concern, that should be a factor weighing against entering or maintaining an order of confidentiality." *Id.* (citing *FTC v. Standard Fin. Management Corp.*, 830 F.2d 404, 412 (1st Cir.1987) (threshold for sealing is elevated because the case involves a government agency and matters of public concern)). This factor is rooted in First Amendment protections. "[T]he courts

4

of this country have long recognized a 'general right to inspect and copy public records and documents, including judicial records and documents' in part because the public has an interest in 'keep[ing] a watchful eye on the workings of public agencies.' *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978)." *United States v. Erie County NY*, 763 F.3d 235, 242-43 (2d Cir. 2014). Although it is not yet known whether the deposition video in this case will become a judicial record or document, such as if it is filed on the docket or admitted into evidence and forms the basis of a Court decision, the video will immediately be a public record and document, it being the questioning of a public official on public conduct in a matter of public interest. This Court should avoid any constitutional issues by finding at this factor weighs against a perpetual order at this time and simply issuing a litigation order.

### IV. Connecticut's Freedom of Information Act Undermines Defendants' Arguments for Permanent Restrictions

Connecticut's Freedom of Information Act (FOIA) further weakens Defendants' position. Under Connecticut's robust public records laws, materials related to the official conduct of state employees are generally subject to disclosure. *See* Conn. Gen. Stat. § 1-210. Indeed, "because of the public interest in the fairness of police investigations, there is a general presumption in favor of disclosure, even for investigative reports that exonerate police officers from the charges that have been brought against them." *Department of Public Safety v. FOIC*, 242 Conn. 79, 88 (1997). The only time police records are exempt from FOIA is usually during an ongoing investigation or pending prosecution, or if highly personal, non-job-related details are at issue. Neither is the case here once this civil litigation is concluded. FOIA exempts records pertaining to pending civil litigation to which an agency is a party, but only until that litigation is finally adjudicated or settled. Conn. Gen. Stat. § 1-210(b)(4) provides that records of strategy or negotiations in pending claims or litigation involving a public agency may be withheld "until

such litigation or claim has been finally adjudicated or otherwise settled." This means that once this case is over, any documents in Defendants' possession that were gathered or used in this litigation (including deposition transcripts or videos) will no longer fall under a FOIA exemption for pending cases. In other words, after this lawsuit, those materials become presumptively disclosable public records upon request. FOIA would not permit the blanket withholding of the content of sworn testimony about official actions, especially in a matter of public concern. This Court should not enter an order to accomplish what Defendants could not shield under state law.

      This reality undercuts any argument that an indefinite court order is needed to protect Defendants. The long-term privacy or security concerns cited by Defendants are not truly served by a protective order, because Connecticut law will not honor secrecy for these kinds of records indefinitely. If there were a credible safety threat (e.g. a specific threat to an officer's life), that could be addressed by targeted measures (like sealing home addresses, other personal identifying information, or health information).[1]  Instead, Defendants are asking this Court to do what Connecticut's own public records law forbids: to permanently conceal records of official conduct from the public. The FOIA policy reflects the legislature's judgment that transparency in government operations (including police conduct) is a fundamental right of the people, tempered only by limited exemptions. A court-issued protective order should not override that policy without compelling justification. Here, rather than shielding Defendants, an indefinite protective order would likely set up a conflict with FOIA down the road – inviting litigation or public records fights that could have been avoided.

---

[1] Defendants have mentioned prior "death threats" related to this case. No evidence of that has been disclosed to the Plaintiff. Plaintiff has requested evidence of this contention under Rule 34. We respectfully also argue that any such evidence fails to adequately support the claim that releasing deposition testimony after the case is over would create any new danger beyond what already exists from the underlying incident being public. In fact, any individuals inclined to threaten officers likely already know the basic facts from Plaintiff's public filings or videos; keeping the deposition secret will not change that.

It makes far more sense to align the Court's order with FOIA's principles: allow confidentiality while the case is active (when FOIA would exempt the records as "pending litigation"), but do not extend secrecy beyond the point at which state law would recognize the records as open to public inspection.

### V.  Perpetual Restrictions on Deposition Materials Undermine Settlement Incentives and Judicial Economy

Practical considerations also counsel against the sweeping protective order sought by Defendants. Transparency regarding deposition testimony serves as a powerful incentive for reasonable settlement. When parties know that their testimony will eventually be subject to public scrutiny, they are more inclined to resolve cases on fair terms rather than proceed through protracted litigation. The converse is that perpetual confidentiality can embolden unreasonable litigation positions and reduce settlement prospects. A recent study of §1983 police misconduct suits found that cases with protective orders that keep misconduct records secret tend to result in significantly higher settlement amounts than similar cases without them. *See* Chelsea Hanlock, *Settling for Silence: How Police Exploit Protective Orders*, 109 Cal. L. Rev. 917 (2021). If everything is sealed by default, as the State seeks here, given the challenging standard for modifying a protective order after a litigation is concluded, the Court essentially ensures that the only currency of settlement is money, and the public's interest in correcting and exposing official misconduct is thwarted by that.

### **CONCLUSION**

This Court should grant the motion for protective order—with the following proviso—the Court enters this protective order "during the pendency of this matter."

Respectfully submitted,

7

THE PLAINTIFF,

**Alexander T. Taubes**
470 James Street, Suite 007
New Haven, Connecticut 06513
Telephone: (203) 909-0048
alextt@gmail.com
Federal Bar No.: ct30100